JAMES S. PERRY *et al.*

*v.*

GEORGE W. BURTON ·*et al.*

*Filed at Ottawa September 27, 1884.*

1. EVIDENCE—*proof of contents of lost deed.* After the fact of the execution and loss of a deed was clearly shown, the substance of the contents of the deed was proved by oral evidence: *Held,* that the proof was sufficiently full. All that witnesses in such cases can be expected to remember, is that a deed was made, to whom and about what time, for what consideration, whether warranty or quitclaim, and for what property. To require more would render such proof almost impracticable.

2. LIMITATION—*act of 1839—what is color of title.* To constitute color of title, the deed must purport to convey title to the land to which it is claimed to be color of title.

3. SAME—*color of title as to an undivided interest—as to the identity of such interest.* If it be conceded a tax deed for the undivided half of a tract of land may be color of title as to one of the undivided halves, a party holding such color of title must show that sale of the land was for the half interest against which it is sought to be used. The burden of proof is on him to show that the sale was not made for the other half interest not assailed by him.

4. . Where an administrator, under decree of court, sold and conveyed an undivided half of a tract of land in September, 1843, of which his intestate died seized, to one Judd, who, in November, 1843, conveyed the same interest to Cook, who, in November, .1842, had bought at tax sale the undivided half of the same tract for the tax of 1841, and received a sheriff's deed December 9, 1844, on his tax purchase, and claimed that he thereby obtained title to both undivided halves, or title to one and color of title to the other: *Held,* that in the absence of satisfactory evidence as to the fact the tax sale was of a different undivided half than that sold at the administrator's sale, he could not claim title to the whole, and prevent a partition.

5. SAME—*evidence as to payment of taxes.* The proof of the payment of all taxes on land under color of title, in order to defeat the paramount title, must be clear and convincing. Such a title should not be overcome by loose and uncertain testimony, or upon mere conjecture or violent presumptions.

APPEAL from the Superior Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding.

Mr. EDMUND S. HOLBROOK, for the appellants.

Messrs. MOORE & BROWNING, for the appellees.

Messrs. G. & W. GARNETT, for the Louisville Banking Company.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

This was a bill for the partition, as first drawn, of a tract of eighty acres of land in Cook county, and to quiet the title thereto. By an amendment to the bill, the north forty acres of the tract were taken out of the controversy, and the allegations and prayer of the bill were limited to the south forty acres.

The tract was entered by Isaac Cook on the 30th of November, 1835, and he conveyed the undivided half thereof to Asa M. Chambers and Sheldon Benedict, by warranty deed, on the 7th of February, 1836. In November, 1848, Benedict conveyed his interest in the tract to Chambers, and on the 10th of November, 1871, Chambers conveyed his interest in the tract to the appellants, James S. Perry and John N. Henderson. No question is made as to any of these conveyances, except that by Benedict to Chambers. The deed effecting that conveyance was lost, and its execution and contents were proved by oral evidence only, and counsel for appellees insist that such evidence was not sufficiently full and satisfactory. We can not concur in this view. The facts that the deed was executed and was afterwards lost were clearly proved. If the witness is credible, there can be no doubt in either of these respects. He stands unimpeached by any of the modes of impeachment known to the law. There is nothing incredible in his evidence, and so far as the record discloses, there was nothing in his manner to discredit him. His testimony as to the contents of the deed, we think,

is sufficiently full. A witness testifying to the contents of a lost deed is not to be expected to be able to repeat it *verbatim* from memory. Indeed, if he were to do so, that circumstance would, in itself, be so suspicious as to call for an explanation. All that parties, in such cases, can be expected to remember, is, that they made a deed, to whom, and about what time, for what consideration, whether warranty or quitclaim, and for what property. To require more would, in most instances, practically amount to an exclusion of oral evidence in the case of a lost or destroyed deed. The evidence here meets the requirements suggested, and in the absence of contradiction or impeachment, was sufficient to authorize the court to decree upon the faith of it.

Appellees' title arises thus: On the 28th of October, 1837, Cook conveyed the other undivided half of the tract, by warranty deed, to John C. Gibson, leaving himself then divested of all title. It appears that Gibson died intestate on the 27th of January, 1840, and letters of administration were issued upon his estate to Margaret Gibson, as administratrix, on the 6th of February, 1840. On the 28th of November, 1842, the undivided half of the tract was sold for the delinquent taxes of 1841, and purchased by Cook. At the March term, 1843, of the Cook circuit court, the administratrix of the estate of Gibson was empowered, by decree, to sell the interest in the tract owned by Gibson at the time of his death, for the purpose of paying debts, and on the 11th of September, 1843, she, in pursuance thereof, sold and conveyed the same to Norman B. Judd, and on the 10th of November, 1843, Judd conveyed his interest in the tract to Cook. On the 9th of December, 1844, the sheriff of Cook county executed a tax deed to Cook for the undivided half of the tract. On the 6th of July, 1857, Cook sold and assumed to convey the whole tract to Finnell & Wintersmith, and all claims on behalf of appellees are through that conveyance. That deed, of course, as a conveyance of title, depends upon

the regularity of the title in Cook at the time it was executed, and it is not sought to be used as mere color of title, because there has been no successive seven years' payment of taxes under it. But it is contended on behalf of appellees that the deed of Judd, and the sheriff's tax deed to Cook, constituted color of title in him, obtained in good faith, and that the evidence shows that he paid taxes thereunder for seven successive years. Appellants deny both that those deeds constituted color of title in Cook and that the evidence shows that he paid taxes thereunder for any period of seven years successively. To constitute color of title the deed must purport to convey title to the land of which it is claimed to be color of title. *Bride* v. *Watt,* 23 Ill. 507; *Busch* v. *Huston,* 75 id. 343; Sedgwick & Wait on Trial of Titles to Land, sec. 768.

This tract of land was not subject to taxation until 1841. (Act of Congress, April 18, 1818, 4th div. of sec. 6,—Rev. Stat. 1874, p. 29; Ordinance of August 26, 1818, sec. 4,— Rev. Stat. 1874, p. 30.) At that time the title to one undivided half was in the heirs at law of John Gibson, deceased, and the title to the other undivided half was in Chambers and Benedict. If it be conceded that a tax title could, under the law then in force, be acquired to an undivided interest in a tract of land, it is obvious there being default in the payment of taxes on either undivided half would have justified the description of the land as it was described in the tax sale and the tax deed. The difficult question is to ascertain whether that undivided half was that held by Chambers and Benedict, or that held by the heirs at law of Gibson. The burden is upon appellees to show that it was that held by Chambers and Benedict. Have they done so? We think not. There is no proof of any payment of taxes either by the heirs of Gibson or by Chambers and Benedict, or of delinquency in either in that regard, prior to the delinquency for which was this tax sale. It is true that Chambers says he never paid

any taxes on this land, nor did Benedict, that he knows of,—still it does not appear that Benedict might not have paid them without his knowledge, or that they might not have been paid by some one else. The presumption, if we were to indulge in presumptions alone, would seem, from the circumstances in evidence, to be stronger that the delinquency was that of Gibson's heirs than that it was that of Chambers and Benedict. The delinquency occurred after the death of Gibson, and before the settlement of his estate. The administratrix was not authorized to pay the taxes, and the heirs at law do not seem to have had an adequate motive to do so, because the land is shown to have been charged with the payment of debts against the estate to the extent of the value of their interest in the land.

But the evidence of Cook, as we understand it, shows that he paid taxes on the undivided half belonging to Chambers and Benedict, under a claim and belief of ownership, and consequently that the delinquency must have been that of Gibson's heirs at law. He says: "After I received that deed I paid taxes. I paid on the whole, or both undivided halves. I paid taxes on it before I purchased it for taxes. Yes, sir; on the whole of it, I think." Question 14: "And was certain you paid on your own individual half?" Answer: "Yes, sir." We have seen that there could have been taxes paid only for the year 1841 before the sale, the sale for delinquency being for that year, and so the witness must have been mistaken in saying that he had paid taxes on the whole tract before the sale. But it is charitable and reasonable to assume that he paid before that time on what he called his half, and it is only as to this half that the question and answer make him speak quite positively. What that half was, he explains further along in his re-direct examination. He there says: "I claimed the land in this way: There was an indebtedness due me by Chambers and Benedict. I thought, in case it was not paid that gave me a right to the

property. The matter had not been settled up from the time they got the property. I always waited for them to come up to perform their promise, but they never returned. I supposed they were dead." The mere fact that subsequent to his purchase at the tax sale, Cook bought and took a deed from Judd for an undivided half of the tract, and that he subsequently thereto took a deed from the sheriff for an undivided half of the tract by virtue of his tax sale, does not necessarily prove that he was trying by each to obtain a deed to a separate undivided half. The proceedings under which the administratrix sold may have been irregular, or have been feared to be so, and the tax sale may have been distrusted as a source of title, and so the party have been anxious to prop up and bolster his title to that undivided half as best he could; but having, as it would seem, already a belief that he had the undivided half which he had conveyed to Chambers and Benedict, however erroneous the belief, he would not feel prompted to do any act to give him that title. In any view we can take, we are unable to say that it is made here to appear, by the evidence, that the tax sale was of a different undivided half than that which was sold at the sale of the administratrix.

The evidence of the payment of taxes for seven successive years is confined to Cook's statements. In his direct examination he is quite full and positive as to the payment, but in his cross-examination he shows that in fact he knows nothing about it. All that he proves is that he instructed his agent to pay, not these particular taxes, but all his taxes. Thus, he is asked: "Do you remember it" (*i. e.*, the payment of taxes on this property,) "clearly?" And he answers: "Well, I judge so from the fact that if it had been sold I would have had to redeem it, as I paid taxes right along." Then he is asked: "So your remembrance is one of inference?" To which he replies: "Well, yes. It is a good many years ago. I can't swear to any particular point. That is my general idea of it, to the best of my recollection."

He was then asked: "Can you swear positively that you paid any one certain year—say 1850?" He answered: "Well, my impression is that the taxes were paid every year, except by some mishap my agent did not pay it. He was authorized and directed to pay the taxes on my property." Again he says: "Well, I know they were paid, as I had an agent to pay my taxes. I could not say my agent paid every year. It was his business to do it." And again: "I presume it was paid every year." And still again, in speaking of their payment, he says: "It is the presumption. I would not swear positively to anything."

We said in *Hurlbut* v. *Bradford*, 109 Ill. 397, where the same kind of question was before us: "Inasmuch as the payment of taxes under color of title operates to defeat the paramount and all other titles, when relied on, the proof must be clear and convincing. Such titles should not be overcome by loose and uncertain testimony, or upon mere conjecture or violent presumptions." This evidence utterly fails to come up to this standard.

For the reasons given, the decree below is reversed and the cause remanded.

*Decree reversed.*

Mr. JUSTICE SCOTT, dissenting.