John S. Perry *et al.*

*v.*

George W. Burton *et al.*

*Filed at Ottawa November 15, 1888.*

1. Tax title—*valid judgment and precept essential.* A party claiming title under a tax deed executed under the act of 1839, and according to the form therein prescribed, must show a valid judgment and precept before he can read his deed in evidence.

2. Limitation—*act of 1839—conditions which must concur.* To make the bar of the seven years limitation act of 1839 complete, it is not sufficient that there be merely color of title. There must also be payment of taxes for seven years, either while the land is in possession, or while it is vacant and unoccupied.

3. To constitute a bar under that statute, the possession of the holder of color of title must continue during the same years for which he pays the taxes. The possession and payment of taxes must concur and unite in the same person. The party paying taxes under color of title can not, by purchase from one in possession under an outstanding claim, avail of the possession of his grantor, in order to make the seven years' possession.

4. Practice—*proceedings after reversal and remandment.* Where a decree is reversed, and the cause remanded without directions, the lower court will have the power to allow amendments of the pleadings and the introduction of other evidence on the hearing.

Appeal from the Superior Court of Cook county; the Hon. Henry M. Shepard, Judge, presiding.

Mr. Edmund S. Holbrook, and Mr. A. D. Eddy, for the appellants:

The decision of this court when the case was here before is *res judicata,* and conclusive on the title to the land. *Johnson* v. *Von Kettler,* 84 Ill. 315; *Hough* v. *Harvey,* 71 id. 72; 84 id. 308; *Mosier* v. *Norton,* 83 id. 519; *Hanna* v. *Read,* 102 id. 596; *Bailey* v. *Bailey,* 115 id. 551; *Osborn* v. *McCartney,* 120 id. 409; *Ogden* v. *Larrabee,* 70 id. 510; *Ruegger* v. *Railroad Co.* 103 id. 449; *Cooper* v. *Corbin,* 105 id. 224; *Newberry* v.

*Blatchford,* 106 id. 586; *Walker* v. *Doane,* 108 id. 236; *Hook* v. *Richeson,* 115 id. 431; *Railroad Co.* v. *Peterson,* id. 597; *Umlauf* v. *Umlauf,* 117 id. 580; *Manufacturing Co.* v. *Wire Fence Co.* 119 id. 31; *Cable* v. *Ellis,* 120 id. 136; *Chaffin* v. *Taylor,* 116 U. S. 567; *Gates* v. *Preston,* 41 N. Y. 113; *Lewis* v. *Lewis,* 106 Mass. 309; *Ballard* v. *Insurance Co.* 81 Ind. 239; *Parks* v. *Cliff,* 9 Lea, 524; *Choteau* v. *Gibson,* 76 Mo. 43; Wells' Res Judicata, sec. 619; 1 Herman on Estoppel and Stare Decisis, sec. 122, *et seq.*

Mr. MELVILLE W. FULLER, and Mr. GRANVILLE W. BROWN-ING, for the appellees:

The order reversing and remanding, with general directions to proceed, is not a final decree, in any sense. The court be-low had power to allow amendments to the pleadings, and allow the introduction of other evidence. *Cable* v. *Ellis,* 120 Ill. 139; *Chickering* v. *Failes,* 29 id. 294; *Hook* v. *Richeson,* 115 id. 440; *Moore* v. *Robbins,* 18 Wall. 588.

Mr. WILLIAM GARNETT, Jr., for the Louisville Banking Co.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This case has been before this court heretofore, as will be seen by reference to the opinion filed on September 27, 1884, and reported as *Perry et al.* v. *Burton et al.* 111 Ill. 138. The facts are sufficiently stated there, and it is unnecessary to recapitulate them here. By the terms of the former opinion the cause was reversed and remanded. After the case was docketed in the court below, it was reheard, partly upon testimony introduced at the first hearing, and partly upon new evidence, and a decree was rendered dismissing the bill. From that decree this appeal is prosecuted.

Appellants insist that the trial court should have entered a decree, finding Perry and Henderson to be the owners of an undivided one half of the forty acres and should have pro-

ceeded with the partition of the property between them and the owners of the other half, upon the alleged ground that the former decision of this court settled the rights of the parties and was a final adjudication thereof. Inasmuch as the cause was reversed and remanded without directions, we think that the trial court had the power to allow amendments to the pleadings and to permit the introduction of other evidence, in accordance with the views expressed in *Chickering* v. *Failes,* 29 Ill. 294, and *Cable et al.* v. *Ellis et al.* 120 id. 136.

Upon the record as it now stands, we see no escape from the same conclusion, which we reached when the case was here before. We then held that the proofs did not clearly show a sale for taxes of the undivided one half of the land that was owned by Chambers and Benedict. Upon the second trial appellees supplied the necessary proof upon this subject, and it now appears, that the undivided half then belonging to Chambers and Benedict was sold to Cook at the tax sale in November 1842, and conveyed to him by the tax deed dated December 9, 1844. Cook made a deed of the whole tract of eighty acres to Finnell and Wintersmith in July 1857. Appellants claim, that, between 1844 and 1857, under the tax deed as color of title, Cook paid all the taxes upon the land for seven successive years while it was vacant and unoccupied. To make the bar of the statute complete, it is not sufficient that there be merely color of title. There must also be payment of taxes for seven years. Upon the hearing below, no new evidence was introduced in regard to the payment of taxes by Cook. The only witness upon that subject was Cook himself, nor has he been re-examined. His deposition, taken on August 24, 1882, and which was read upon the first trial, was re-read upon the second trial. Cook's testimony as given in this deposition is the only evidence now in the record as to the payment of taxes prior to 1857, and is the same evidence, which we commented upon in our former opinion. We there held it to be insufficient to show such payment. Our views

as then expressed upon its value for such purpose are binding upon us now.

The tax deed of 1844, standing alone, does not vest Cook with the title. It was executed under the Act of February 26, 1839, and according to the form there prescribed. (Laws of Ill. Dec. 1838, page 17). We have held, that a party, claiming title under a tax deed executed in accordance with the provisions of that Act, must show a valid judgment and precept before he can read the sheriff's deed as evidence of title. (*Hinman* v. *Pope,* 1 Gilm. 131; *Atkins* v. *Hinman,* 2 id. 437). No judgment or precept has been shown here.

It is claimed, however, that there were possession and payment of taxes for seven successive years under the deed from Cook to Finnell and Wintersmith, executed July 6, 1857. We have examined the record with great care and do not find this claim sustained by the evidence. The property was sold in 1857 for the taxes of 1856 and purchased at the tax sale by Frederick R. Wilson. The testimony of Finnell is to the effect that he paid the taxes from 1857 to 1861 inclusive. But a tax deed was issued to Wilson in pursuance of the sale to him, and such tax deed was recorded on August 24, 1859. In June 1861 Wilson leased the land to one Bradley, who built a house upon the 80 acres near the center of the tract with the intention of living there five years, but, on account of the low and wet condition of the ground, Bradley moved away in the fall of 1861 taking his house apart and carrying it off with him. Finnell testifies that he saw this house on the land in September 1861, and at once entered into negotiations for the purchase of Wilson's tax title, but, owing to the fact of his being in the Union army during the civil war, he did not complete these negotiations with Wilson until after the war. He states that they were pending "in a loose sort of way" until April 26, 1865, on which day a quitclaim deed was executed to him by Wilson.

Finnell states, that, at the time he received this deed from Wilson in April 1865, there was a house upon the land occupied by a tenant of Wilson. This tenant at once attorned to Finnell and afterwards paid him rent. He had been paying Wilson for the grass as his tenant for some time prior to April 26, 1865, but at what time between 1861 and 1865 he went into possession of the land, or at what date the house was built does not appear.

Finnell also states that John Forsythe paid the taxes in 1863 and 1864, that is for the years 1862 and 1863, and that he afterwards settled with Forsythe through one Hunter, and "redeemed the land under his (Forsythe's) purchase or forfeiture." Counsel for appellees say in their brief: "John Forsythe bid in the property for the taxes of 1862 and paid for 1863."

It thus appears, that, if Finnell paid all the taxes from 1857 to 1861 inclusive, he only paid for five successive years. He did not pay the taxes of 1862, but suffered the premises to be sold for the taxes of that year. Nor during the five years in question was the land continuously vacant and unoccupied. Wilson's tenant, Bradley, was in possession of it, living on it with his family from June 1861 to the fall of 1861.

In 1869 there was a partition between Finnell and Wintersmith, by the terms of which Wintersmith deeded to Finnell the south forty acres of the tract. Finnell sold and conveyed this tract of forty acres to George G. Street on February 23, 1871. Street sold and conveyed the forty acres to Hansbrough about March 1, 1871, and afterwards on January 30, 1872, Hansbrough conveyed the forty acres to George W. Burton.

The testimony does not show certainly whether the taxes of 1864 were paid by Forsythe or Finnell, but it does show that Finnell paid all the taxes from 1865 to 1870 inclusive. If it be conceded, however, that Finnell paid all the taxes during the seven years from 1864 to 1870 inclusive, there is no evidence, either that the premises were vacant and unoccupied

during these seven years, or that they were in his possession during the whole period of the seven years. There was a house on the land in the occupancy of a tenant in 1865, 1866, 1867 and 1868. But as to the years 1869, 1870 and 1871 there is nothing to show whether the premises were vacant and unoccupied, or in the possession of some one. It is not proven that the house and tenant referred to remained there after 1868. Porter and Hitt swear that the eighty acres were vacant in April 1872, but at what time they became so between 1868 and 1872 does not appear. Hansbrough swears, that the land was "raw prairie" with no house or fence on it in February or March 1873, and that he then fenced it and built a house on it, as agent for Burton. He also states that he paid the taxes of 1873, but it is not shown by whom the taxes of 1871 and 1872 were paid, or whether they were paid at all. The bill in this case was filed July 18, 1873.

Counsel for appellees say : "the evidence shows actual possession by Wilson for the eight years from 1861 to 1868 inclusive, and the payment of the taxes from 1864 to 1870 inclusive by General Finnell, and also for 1863 if the repayment to Forsythe of the amount advanced for the taxes of that year be treated as payment." If it be admitted that this statement is sustained by the proofs, it does not establish a legal bar under the statute. The possession must continue during the same years for which the taxes are paid. The possession of Wilson from 1861 to 1868 cannot be tacked on to Finnell's payment of taxes from 1864 to 1870 inclusive. To make the bar complete in Finnell's favor, he should have been in possession from 1864 to 1870 while he was paying taxes. Moreover, it cannot be said that Wilson was in possession from 1865 to 1868 inclusive, because, as has already been stated, he conveyed his title and delivered his possession to Finnell in April 1865.

Our attention is called to the peculiar hardship of the former decision in this case, in view of the large amounts of money

expended by appellees in the purchase of a title, which they believed to be good. Whatever may be the fact in this regard, we cannot hold otherwise than in accordance with the views here expressed without overturning a long line of decisions that have for many years been followed as rules of property in this State. We must say, as was said by the Supreme Court of the United States, speaking through Mr. Justice Harlan, in the case of *Buchanan* v. *Litchfield,* 102 U. S. 278, "Waiving all considerations of the case, in its moral aspects, it is only necessary to say, that the settled principles of law cannot, with safety to the public, be disregarded in order to remedy the hardships of special cases."

The decree of the Superior Court of Cook County is reversed and the cause is remanded.

*Decree reversed.*