(January 18, 1902.)

## JONES, ADMINISTRATOR, *v.* STODDART.

[67 Pac. 650.]

AUTHORITY OF THE PRESIDENT OF A CORPORATION TO TRANSFER NEGOTIABLE PAPER.—The president of a business corporation has the implied power to transfer its negotiable paper so as to enable a purchaser to take the same, when properly indorsed, freed of any equities or infirmities of which he had no notice.

NECESSITY OF AUTHORITY FROM THE BOARD OF DIRECTORS TO THE PRESIDENT.—It is not necessary for one who claims to be a purchaser of a negotiable note to show formal resolution of the board of directors directing the president to indorse the note. Especially is this true if it is disclosed by the evidence that the indorsement was verbally authorized by the board and that the indorsement was for the benefit of the company.

AMENDMENTS—DISCRETION OF THE COURT.—When leave to amend the answer is asked after trial begun, and is granted upon the payment of the costs, fixed at one hundred dollars by the court, and the party declines to accept the terms, there is no error.

EVIDENCE—ASSIGNMENT OF MORTGAGE.—It is not error to refuse evidence of assignment of a mortgage securing a note where the answer denies title to the owner.

NOTICE TO PURCHASER OF NEGOTIABLE INSTRUMENTS.—The fact that a note bore the indorsement of a former president of a company, who is transferring the same, is not notice to the purchaser of any infirmities which may exist where the party at the time of the transfer has ceased to be president, although the transfer may be for the individual interest of the former president.

ATTORNEYS' FEES—REASONABLESS.—It is not error to allow $1,000 attorneys' fees in a suit involving the foreclosure of a mortgage amounting to $11,000, and where the evidence shows a contract to pay $2,000, one thousand of which has actually been paid.

(Syllabus by the court.)

APPEAL from District Court, Canyon County.

Wyman & Wyman, and Martin & McElroy, for Appellants.

The sufficiency of the affirmative defenses was passed upon by this court in case of *Warren v. Stoddart,* 6 Idaho, 692, 59 Pac. 543. There is no conflict in the evidence relating to those defenses. The deed which was the sole consideration for the note is in evidence, together with the records of the corporate board of grantor, and from these it appears that the deed was not authorized by resolution of the board. (*Johnson v. Sage,* 4 Idaho, 758, 44 Pac. 641; *Bliss v. Kaweah etc Irr. Co.,* 65 Cal. 502, 4 Pac. 507.) Unless the evidence is conflicting, presumptions must be excluded. "A presumption cannot contradict facts or overcome facts proved." (Lawson on Presumptive Evidence, 576.) Has the president of an irrigation corporation absolute authority to dispose of the negotiable paper of the corporations? It should be observed in this connection that we are not denying that possession is *prima facie* evidence of title in plaintiff to this note. Neither are we denying that an instrument executed in the name of a corporation by its president, duly attested by its seal, is *prima facie* evidence that the officer was duly authorized; or if it does raise a presumption, it is *prima facie* evidence merely, and subject to rebuttal. (*Burnett v. Lyford,* 93 Cal. 114, 28 Pac. 855.) While a respectable number of authorities are cited in support of the claim that the president is presumed the general agent of the corporation for transaction of its ordinary business, yet an examination of the cases will show that in nearly all of those cases the decision of the court rests

upon authority implied from the circumstances of the particular case. (Thompson on Corporations, sec. 4626.) We think the following authorities applicable to this case: *Mathias v. White Sulphur Springs. Assn.,* 19 Mont. 359, 48 Pac. 625; *Read v. Buffum,* 79 Cal. 77, 12 Am. St. Rep. 137, 21 Pac. 555; *Titus v. Cairo etc. R. R. Co.,* 37 N. J. L. 98; Thompson on Corporations, sec. 4619, and authorities cited.) "The law does not permit one who acts in his fiduciary capacity to deal with himself in his individual capacity, and express contracts thus made are contrary to public policy." (*Wilbur v. Lynde,* 49 Cal. 290, 19 Am. Rep. 645; *San Diego v. S. D. & L. A. R. R. Co.,* 44 Cal. 113.) "One who receives from an officer of a corporation its notes or securities in payment of or as a security for the personal debt of such officer, does so at his peril. *Prima facie,* the act is unlawful, and, unless authorized, the purchaser will be deemed to have taken with notice of the rights of the corporation." (*Wilson v. Metropolitan E. R. Co.,* 120 N. Y. 145, 17 Am. St. Rep. 625, 24 N. E. 384 (notice citations of authority in this case); *Smith v. Los Angeles etc. Co-op. Assn.,* 78 Cal. 289, 12 Am. St. Rep. 53, 20 Pac. 677; *Claflin v. Farmers' etc. Bank,* 25 N. Y. 293.) The next specification of error questions the sufficiency of the testimony to sustain the finding that $1,000 was a "reasonable" attorney's fee for plaintiff herein. It was necessary for plaintiff to prove what was a "reasonable" fee to be allowed herein. We contend the finding is erroneous and not sustained by the evidence.

T. J. Jones and W. E. Borah, for Respondent.

"The pledgee of negotiable instruments, as bills of exchange and promissory notes, before maturity, by indorsement and delivery, so that he becomes a party thereto for the present advance and as a part of the transaction of loan, and without notice of any antecedent equities, is a holder for value, in due course of business. Said promissory notes were negotiable, pledged before maturity, transferred by indorsement and delivery for a present advance, and as a part of the transaction of loan, and come fully within the rule above stated." (*Securities Company v. Rogers,* 6 Idaho, 526, 57 Pac. 316; Colebrooke on Collateral

Securities, sec. 16; *Sims v. Lyles,* 1 Hill (S. C.), 39, 26 Am. Dec. 156; *Fox v. Bank,* 6 Kan. App. 682, 50 Pac. 458; *Murphy v. Gumaer,* 12 Colo. App. 472, 55 Pac. 953.) "Where a note is indorsed in blank, the title and right of action pass by delivery, and the note is payable to bearer." (*Poorman v. Mills,* 35 Cal. 119, 95 Am. Dec. 90; *O'Conner v. Clark* (Cal.), 44 Pac. 482; *Bank v. Shearer,* 108 Cal. 513, 41 Pac. 415; 2 Randolph on Commercial Paper, secs. 706-709.) "The indorsee is presumed to be a holder for value, and the burden is on the defendant to rebut this presumption." (Story on Promissory Notes, sec. 196; *Curtis v. Sprague,* 51 Cal. 239; Idaho Rev. Stats., 3468, 3487.) "Possession by a third person of a negotiable instrument, payable to a corporation, bearing the indorsement of such corporation, regular in form and signed by its general manager, is sufficient to raise the presumption that the officer so indorsing it had authority to make the indorsement, and that the person having the possession thereof is the owner of the note. The production in evidence of the note in question, bearing the indorsement, as above set forth, coupled with the proof Brown was a general manager at the time when said note was indorsed and delivered, was sufficient *prima facie* to entitle appellant to recover." (*Citizens' Nat. Bank v. Wintler,* 14 Wash. 558, 53 Am. St. Rep. 890, 45 Pac. 38; *Carrigan v. Company,* 6 Wash. 590, 34 Pac. 148; *Thomas v. Bank,* 40 Neb. 501, 58 N. W. 943; *Saunders v. Bates,* 54 Neb. 209, 74 N. W. 578; *Bank of Cal. v. Mott Iron Works,* 113 Cal. 409, 45 Pac. 674; *McDonald v. Aufdengarten,* 41 Neb. 40, 59 N. W. 762; *City Nat. Bank v. Thomas,* 46 Neb. 861, 65 N. W. 895; *Champion Co. v. Bird,* 7 Colo. App. 523, 44 Pac. 765; Daniel on Negotiable Instruments, sec. 558; *Mann v. Bank,* 34 Kan. 746, 10 Pac. 150; *Aiken v. Bank,* 16 Wis. 679; 1 Randolph on Commercial Paper, sec. 135.) "Where there is no evidence as to the date of the indorsement, the presumption of law is that it was made before maturity, and that the holder is a *bona fide* holder for value." (*Challis v. Wodburn,* 2 Kan. App. 652, 43 Pac. 792; *First Nat. Bank v. Elliott,* 46 Kan. 32, 26 Pac. 487; *Crosby v. Ritchey,* 56 Neb. 336, 76 N. W. 895; *Lumber Co. v. Bateman,* 41 S. W. 178; *Columbia v. Roberts* (Tex. Civ.), 41 S. W. 111; *Lyon v. Martin,* 31 Kan. 411, 2 Pac. 790;

*Bank v. Emmitt,* 52 Kan. 603, 35 Pac. 213.) "A legal conse-
quence of the transfer and delivery of a negotiable note is that
the law presumes them to have been transferred before they fell
due, in good faith and without notice of any infirmities attach-
ing to them." (*Herlow v. Orman,* 3 N. Mex., 291, 6 Pac.
937; *Good v. Martin,* 95 U. S. 94; *Collins v. Gilbert,* 94 U.
S. 753; *Commissioners v. Clark,* 94 U. S. 278; *Voorhees v.
Fisher,* 9 Utah, 303, 34 Pac. 66; *Miller v. Ottaway,* 81 Mich.
196, 21 Am. St. Rep. 513, 45 N. W. 665; *Yates v. Spofford,* 7
Idaho, 737, 97 Am. St. Rep. 267, 65 Pac. 501; *First Nat. Bank v.
Pennington,* 57 Neb. 404, 77 N. W. 1084; *Bemis v. Horner,* 165
Ill. 347, 46 N. E. 277; *Rublee v. Davis,* 33 Neb. 779, 29 Am. St.
Rep. 509, 51 N. W. 135; *Martin v. Johnson,* 34 Neb. 797, 52 N.
W. 819; *Dobbins v. Oberman,* 17 Neb. 163, 22 N. W. 356; Daniel
on Negotiable Instruments, 767-773.) Counsel specify, as error,
the allowance of the attorney fee of $1,000, and claim there was
not sufficient evidence to sustain that finding. The evidence
shows that $1,500 has actually been paid for attorney fees in the
case, and that a contract covering $2,000 has been made and en-
tered into, although the court allows but $1,000. The plaintiffs
also introduce the evidence of Mr. Smith and Mr. Morrison, at-
torneys, as to the reasonable value of the fees, and without any
objection on the part of the defendant, there was stated to them
the amount sued for, and that the case had been tried and ap-
pealed, and was on trial the second time, as to what the answer
contained, and as to generally what the case consisted of. The
record and files in the case disclose this was an action involving
$11,000 or $12,000, strenuously contested, and we contend that,
had there been no evidence whatever introduced, other than the
contract between the parties as to the attorney fees paid, or to be
paid, and the records and files in the case, which were before
the court, this would be sufficient to enable the court to fix a
reasonable fee. (*Warren v. Stoddart,* 6 Idaho, 692, 59 Pac.
540; *Rapp v. Spring Valley Co.,* 74 Cal. 532, 16 Pac. 325; *Ex-
change Bank v. Wolverton,* 11 Wash. 208, 39 Pac. 248.) As to
the proposed amendment, this, of course, was a matter of discre-
tion with the court, and, under the facts in the case, the discre-

tion was certainly not abused. (*Cheney v. O'Brien,* 69 Cal. 199, 10 Pac. 479; *Ford v. Kenton* (Cal.), 40 Pac. 1031; *Siskiyou Co. v. Gamlich,* 110 Cal. 94, 42 Pac. 468; *Richard v. Hopp* (Cal.), 37 Pac. 920; *Lowe v. Long,* 5 Idaho, 122, 47 Pac. 93; *Palmer v. Railway Co.,* 2 Idaho, 382, 16 Pac. 553.) "A corporation that has received and retained the consideration of a promissory note given for its benefit cannot deny its liability thereon on the ground that the contract was *ultra vires.*" That the company received the full benefit of this indorsement, and is satisfied with it, and has, in every way, ratified it, by never questioning it, the evidence discloses. (*Main v. Casserly,* 67 Cal. 127, 7 Pac. 426; *Gribble v. Brewing Co.,* 100 Cal. 67, 34 Pac. 527; *Olcott v. Railroad Co.,* 27 N. Y. 546, 84 Am. Dec. 312; *Indianapolis Rolling Mill v. Wichita Co.,* 120 U. S. 256, 7 Sup. Ct. Rep. 542; *Pittsburg Co. v. Keokuk Co.,* 131 U. S. 371, 9 Sup. Ct. Rep. 770; 4 Thompson on Corporations, secs. 4621, 5289, 5298, 5299, 5303, 5308, 5318, 5826 ;*Palmer v. Bank,* 78 Ill. 380; *Sparks v. Company,* 104 Mo. 531, 24 Am. St. Rep. 351, 15 S. W. 417.)

STOCKSLAGER, J.—This is an action upon a promissory note, and to foreclose a real estate mortgage given to secure the same. The note is negotiable in form. The execution of the note and mortgage is admitted; the same having been executed by the defendant, Archibald C. Stoddart, and made payable to the Boise City and Nampa Irrigation, Land and Lumber Company, bearing date September 16, 1892, and falling due September 16, 1897. The answer puts in issue the ownership of the note by the plaintiff, and sets up certain affirmative defenses, in the way of failure of consideration, which it will not be necessary to discuss, in the view that we take of the case. The controlling question presented by the appeal is whether or not Joseph D. Warren, now deceased, became the purchaser, in good faith and for value, before maturity, of the note in question. It seems to be conceded that, should the findings of the court below be sustained upon this question, the matters presented in the affirmative defenses would become immaterial.

The first contention urged by counsel for appellants is that while the note bears upon the back the following indorsement, "Boise City and Nampa Irrigation, Land and Lumber Company, by H. E. Simmons, President," no authority is shown which would enable the president of an irrigation company to indorse its negotiable paper. From the evidence presented by the record, there can be no question but that the indorsement is in the handwriting of the party who purports to make the same, and that H. E. Simmons was at the time president of the company. This is testified to by three witnesses, and in no wise disputed; but it is claimed that there should have been an authorized action upon the part of the board of directors, authorizing said indorsement, and that the same should appear by the minutes of the board of directors, or, in other words, in the language of the brief of counsel for appellant, "that the president of an irrigation corporation has no presumed authority to make this indorsement by reason of his official position alone, independent of the board of directors." Mr. Thompson, in his work upon Corporations, says: "Although it is not within the implied power of the president of a corporation to alien its property, except in the ordinary course of its business, yet, as the transfer of negotiable paper is incident to the transaction of nearly every kind of business, and as the president is the usual officer to execute formal written contracts of the corporation, there is no difficulty, on principle, in concluding that he has the implied or *ex officio* power to indorse its negotiable paper, for the purpose of transferring title to it, in the ordinary course of its business, except in cases where it is in express terms or by reasonable implication withheld in some governing instrument, to the knowledge of the person dealing with the corporation. The authorities are to the general effect that such a power is implied in law, and, consequently, need not be proved by an innocent person claiming under its exercise." (4 Thompson on Corporations, secs. 4638, 4639.) In *Mann v. Bank,* 34 Kan. 746, 10 Pac. 150, the note bore the following indorsement: "The Champion Machine Company, by A. W., Pres."; and it was held that such indorsement would transfer the note, freed from all equities or

infirmities of which the purchaser had no notice. We think the following authorities sustain the proposition that the president of an ordinary corporation has the implied power to transfer its negotiable instruments, so as to enable a purchaser for value to take the same freed from all equities or infirmities of which he had no notice: *Citizens' Nat. Bank v. Wintler,* 14 Wash. 558, 53 Am. St. Rep. 890, 45 Pac. 38; *Thomas v. Bank,* 40 Neb. 501, 58 N. W. 943, 24 L. R. A. 263; *Saunders v. Bates,* 54 Neb. 209, 74 N. W. 578; *Aiken v. Bank,* 16 Wis. 679; 1 Randolph on Commercial Paper, sec. 135. But the record in the case discloses that respondent did not rely alone upon the legal presumptions which accompany such an indorsement as is found upon the note in question, but introduced evidence to show that it was with the knowledge and by the authority of the company and its board of directors. While no formal entry of a resolution authorizing the transfer appears in the record, yet it does appear that the company had full knowledge of the indorsement, and that it was actually authorized by the board of directors, and that the same was for the benefit of the company, which received the consideration therefor; and it is not now in court, or questioning the indorsement. R. W. Purdum testified: "Simmons was at the time of that indorsement president of the Boise City and Nampa Irrigation Land and Lumber Company, and also a member of the board of managers. . . . . Simmons made the indorsement on the back of the note. He was president of the corporation at the time. The note was indorsed to raise money. I was present when it was decided by the managers to put it up, and it was taken down by Mr. Jones and I to the bank to put up." Mr. Simmons testified: "I made the indorsement on the back of the note, as president of the Boise City and Nampa Irrigation, Land and Lumber Company, by direction of the board of directors. It was put there by their direction." J. M. Jones, secretary of the company, testified: "The company had full knowledge of this indorsement and of the borrowing of the money on the note, as did also the executive committee and the board of directors. I was present at the meeting of the board of directors when the indorsement was

made." We think that the record fully sustains the authority of the president, under the circumstances, to make this indorsement, and that the purchaser would, under an indorsement thus made and thus authorized, take the note freed of all equities and infirmities. (*Pixley v. Railway Co.,* 33 Cal. 193, 91 Am. Dec. 623; *Main v. Casserly,* 67 Cal. 127, 7 Pac. 426.)

Counsel for appellants urge, however, that, notwithstanding the indorsement, Warren, in fact, purchased the note and took title by assignment, and not by virtue of this blank indorsement. It is claimed that in the first complaint plaintiff alleged transfer by assignment. While this may be true, yet upon the reversal of this case upon a former appeal the plaintiff amended his complaint, and set up transfer and title by virtue of the indorsement. No objection was made to the amendment, and, even if there had been objection, it was within the authority and power of the court to permit the amendment. (1 Ency. of Pl. & Pr. 489; *Currie v. Southern Pac. Co.,* 23 Or. 400, 31 Pac. 963; *Interstate etc. Assn. v. Knapp,* 20 Wash. 225, 55 Pac. 48, 931; *Perry v. Burton,* 126 Ill. 599, 18 N. E. 653.) The evidence upon the part of the plaintiff discloses that the company to whom this note was made payable transferred the note to H. E. Simmons in consideration of his taking up a note of one Dr. Clapp, which note the company owed Clapp; that thereafter, and in June, 1894, Simmons placed the note with Warren, now deceased, as collateral security for a loan of $5,000; that in February, 1895, upon Warren giving Simmons $2,000 in addition to the loan, the note in question was sold to Warren. About this time, it appears, Simmons executed an assignment of the mortgage. As we understand the rule, the production in evidence of the note in question, bearing the indorsement, regular in form, is sufficient *prima facie* evidence to entitle the respondent to recover. The legal conveyance by a transfer and delivery of a negotiable note is one that the law presumes to have been before the note fell due, in good faith, and without notice of any infirmities attaching. Possession, even without explanation, is *prima facie* evidence that the holder is the proper owner or lawful possessor of the instru-

ment, and that he purchased the same before maturity, for a valuable consideration. (*Citizens' Nat. Bank v. Wintler,* 14 Wash. 558, 45 Pac. 38, 53 Am. St. Rep. 890; *Challis v. Woodburn,* 2 Kan. App. 652, 43 Pac. 792; *Herlow v. Orman,* 3 N. Mex. 291, 6 Pac. 937; *Good v. Martin,* 95 U. S. 94, 24 L. ed. 341; *Collins v. Gilbert,* 94 U. S. 753, 24 L. ed. 170.) The evidence affirmatively shows that Warren first obtained the note in question in June, 1894, evidently by virtue of the indorsement, as it was long before the assignment referred to was made, and that said title as security ripened into absolute title upon the payment of $2,000 additional. The assignment of the mortgage would not, in our opinion, have the effect of placing the purchaser in the position of one taking title by assignment. The findings in this respect are sustained by the evidence.

It is also argued, as the note was payable to the company and indorsed by the president, and he was thereby dealing with the company's notes, indorsed by himself, when he transferred the same to Warren, that this would be some notice of any infirmities that might exist. The evidence shows that Simmons had ceased to be president of the company long prior to the time that the note went into the hands of Warren, and that at the time of the transfer to Warren he was in no way connected with the company—at least, he was not its president. It also appears, as we have before stated, that the company actually transferred the note to Mr. Simmons, and there is no question of bad faith as between Mr. Simmons and the company. We do not think that this would be notice sufficient to put a purchaser of a negotiable instrument upon inquiry. The indorsement was regular in form, and, looking at the note as it appeared when presented to Warren, there was nothing to suggest any infirmities. "The inspection of the paper itself furnishes the only criterion by which a stranger to whom it is offered can judge of its character." Had Simmons yet been president of the company, there might be something in the contention of counsel; but he was not president, and this paper is a negotiable instrument, and entitled to be followed by the legal presumptions which accompany such an instrument. (*First Nat. Bank of Freeport v. Compo-Board Mfg. Co.,* 61 Minn. 274, 63 N. W. 731.)

During the trial the defendant asked leave to amend the answer by alleging affirmatively that the plaintiff held title to the note by virtue of an assignment, and not by virtue of the indorsement. The answer as originally filed, denies ownership or title in the plaintiff. The plaintiff's counsel stated that the amendment would necessitate a continuance. The court granted leave to amend the answer upon defendant's paying the cost, which was fixed at $100. The defendant, through his counsel, declined to accept these terms. We cannot see that the amount was unreasonable, or that there was any abuse of discretion upon the part of the court.

Counsel also urge error of the court in refusing permission of the defendant to introduce certain evidence with reference to assignment, to wit, the assignment of the mortgage, both in the transfer of the mortgage from the company to Simmons and from Simmons to Warren. This evidence was not admissible under the pleadings, as the answer stood; and, as counsel did not avail themselves of permission to amend upon the terms allowed, we do not think the refusal of the court was error. Aside from this, in the view which we have taken of the case, the evidence offered would not have proven an assignment of the note. The assignment of mortgage was in the record, and we have examined the same.

Another error assigned is that of the court in fixing the attorney's fees at $1,000. The amount of the note sued upon, principal and interest, is about $11,000. The record shows that the case has been earnestly and ably contested. The testimony also discloses that the plaintiff has actually contracted to pay as attorney's fees $2,000, $1,000 of which has been paid. Evidence was also introduced of attorneys as to the reasonableness of the fee, both of whom fixed the fee higher than the court allowed. The court having found that $1,000 was a reasonable fee, we are unable to say that the finding is not supported by the evidence.

We have examined the record and the numerous assignments of error, and find no reversible error. The judgment is affirmed, with costs to respondent.

Sullivan, J., concurs.

QUARLES, C. J.—I am unable to concur in the conclusion reached by my associates in this case. This action was commenced in the district court by Joseph D. Warren now deceased, during his lifetime, to obtain judgment foreclosing a certain real estate mortgage given to secure the payment of a note executed by the appellant, dated September 16, 1892, due September 16, 1897, for the sum of $6,400. The original plaintiff having died during the pendency of this action, the respondent, T. J. Jones, has been duly appointed and qualified as administrator with the will annexed of said decedent, and the action revived in his name as such personal representative. The cause was tried, findings of facts in favor of the respondent made, and a decree foreclosing said mortgage rendered and entered, from which this appeal is taken.

A number of errors are assigned, but, in order to properly understand the same, it is first necessary to review the history of this action. This is the second appeal in this action. From the first judgment, rendered in favor of the respondent, appeal was brought to this court, and upon hearing said appeal this court reversed the said judgment. (See *Warren v. Stoddart,* 6 Idaho, 692, 59 Pac. 540.) The grounds upon which the first judgment was reversed are fully stated in the said opinion; the principal error for which said decree was reversed being the error which the lower court made in striking out certain paragraphs of the answer which averred facts showing a failure of consideration, and a breach of the warranty against encumbrances contained in the deed, which was the alleged consideration for the note and mortgage. The original complaint in this action alleged the execution of the said note and mortgage to the original mortgagee, the Boise City and Nampa Irrigation, Land and Lumber Company, and an assignment thereof by said original mortgagee to H. E. Simmons, and a subsequent assignment thereof by said Simmons to the plaintiff, Warren. In the decision of this case upon the former appeal, this court, in delivering the opinion, uses the following language: "The plaintiff alleges title to the promissory note and mortgage sued on by as-

signment, and not by indorsement. He claims only to be an assignee, and not an innocent purchaser, and his rights are subject to any defense which the maker had against the original payee at the time of the assignment. He stands in that respect in the shoes of his assignor." The decision upon the former appeal became the law of this case but, notwithstanding, after this case was remanded to the district court, with instructions to proceed in accordance with the views expressed in the opinion, the district court permitted the plaintiff to amend his complaint so as to aver a transfer of the note in question to the said Simmons by ordinary indorsement, and a transfer by the said Simmons to the plaintiff, the said Warren, by indorsement instead of assignment. Was it proper for the district court to permit the plaintiff to amend by averring title by indorsement, when the palpable object of such amendment was to deprive defendant of the defenses which this court had adjudged were, if proven, good and valid? I think not.

At the former trial the plaintiff had alleged title to said mortgage note by assignment. He had introduced witnesses (one of them being H. E. Simmons) who testified that said note and mortgage were assigned to said Simmons, and afterward assigned by said Simmons to the plaintiff, Warren. At the last trial, on behalf of the plaintiff, R. W. Purdum was introduced as a witness, and testified, in substance and effect, as follows: "I was a director and manager of the Boise City and Nampa Irrigation, Land and Lumber Company from 1890 to 1893, and assistant manager from 1893 to 1899. Defendant Stoddart signed the note and mortgage herein. The indorsement on the back of the note in the following words, 'Boise City and Nampa Irrigation, Land and Lumber Company, by H. E. Simmons, President,' is all in the handwriting of H. E. Simmons. Simmons was at the time of that indorsement president of the Boise City and Nampa Irrigation, Land and Lumber Company, and also a member of the board of directors. This indorsement was made in the winter of 1892, while Mr. Simmons was president of the corporation." On cross-examination said witness testified: "I think I was president at the time this

indorsement was made.    The note was indorsed to raise money.
After the note was indorsed, Mr. Jones and myself took it to
the First National Bank of Boise City."    On behalf of the de-
fendant at the last trial in the district court the fourth para-
graph of the original complaint was read in evidence, in words
and figures as follows: "4. That on the nineteenth day of April,
1894, for value received, the Boise City and Nampa Irrigation,
Land and Lumber Company did, in writing, sell, assign, trans-
fer, and deliver the said note and mortgage to one H. E. Sim-
mons."    Defendant then offered the sixth paragraph of said
original complaint, which was received in evidence, in words
and figures as follows: "That on said fifth day of February,
1895, for value received, the said H. E. Simmons did, in writ-
ing, sell, assign, transfer, and deliver to Joseph D. Warren, the
plaintiff herein, the said note and mortgage."    Defendant of-
fered paragraph 11 of the second amended complaint herein,
which was received in evidence, in words and figures as follows:
"That on the said fifth day of February, 1895, for value re-
ceived, the said H. E. Simmons did, in writing, sell, assign,
transfer, and deliver to Joseph D. Warren (now deceased) the
said note, indorsed in writing as aforesaid and said mortgage."
Both the said complaint and amended complaint were verified.
The defendant offered in evidence a deed from the Boise City
and Nampa Irrigation, Land and Lumber Company, dated Sep-
tember 14, 1892, in which the said irrigation company purports
to convey, grant, bargain, and sell unto the defendant Stoddart
six and four-tenths water rights to the use of water flowing
through the canal of said grantor, each water right represent-
ing one cubic foot of water per second of time which deed the
record shows to have been the consideration for the execution
of said note and mortgage by the defendant Stoddart to said
irrigation company.    Said deed contained the following stipula-
tion: "The second party, his heirs, executors, administrators,
and assigns, agree to pay the said first party, its successors or
assigns, on or before the 1st of October in each year hereafter,
the sum of $100 on each water right covered by and granted by
this indenture and agreement, and a proportional sum on each

proportional part of a water right as assessment for the management and maintenance of said canal for the ensuing year; and the said first party reserves to itself the right to establish and enforce such rules, by-laws, and regulations, and to provide and declare such penalties and forfeitures, as it may deem necessary or expedient for the purpose of enforcing and collecting assessments, or any part thereof, including the right, under all circumstances, to shut off the water, and keep it shut off until such assessment has been paid." Defendant also offered in evidence, and which was received, the deposition of H. E. Simmons, taken on behalf of the plaintiff, in which said Simmons testified, in part, as follows: "My residence is Summit, New Jersey; and my occupation handling mining properties. I was president of the Boise City and Nampa Irrigation, Land and Lumber Company, in Idaho, from January, 1891, to September, 1893. The business of that company was to furnish water for irrigation and electric power. I was not in Idaho at the time of the business transactions of the company with Mr. Stoddart. (Note sued upon exhibited witness.) I made the indorsement on the back of the note, as president of the Boise City and Nampa Irrigation, Land and Lumber Company by direction of the board of directors. It was put there by their direction. A quorum of the board saw that indorsement. They saw it at the time it was made, because it was for a specific purpose. I am not able to give the exact date. It was in 1892. That is my impression. It was between April, 1892, and August, 1893. The indorsement was put on for the purpose of using the note as collateral upon a loan made by the First National Bank of Boise City. I was the owner of this note from April, 1894, until February, 1895. I paid $6,400 for the note to the president of the Boise City and Nampa Irrigation, Land and Lumber Company. I sold the note to Joseph D. Warren, of Stamford, Connecticut, February 5 1895, for $7,000. The indorsement was on the note when I sold it. It was there when I got it. The exact language of the indorsement that was on the note at the time I bought it was, 'Boise City and Nampa Irrigation Land, and Lumber Company, by H. E. Simmons, President.'" Cross-examination by defend-

ant: "I reside at Summit, New Jersey. Left Idaho November, 1894. Knew Joseph D. Warren twenty years in his lifetime. He lived at Stamford, Connecticut, and I lived at Summit, New Jersey. I told him I was president of the Boise City and Nampa Irrigation, Land and Lumber Company. I stated it to him in conversation with him. I sold the note to him February 5, 1895, at Stamford, Connecticut. He had paid me $5,000, and he paid me $2,000 in cash. On February 5, 1895, we came to an agreement to discharge the obligation, and in discharging it he took an assignment of the Stoddart note and mortgage."

The evidence introduced at the last trial, as well as that at the first trial, shown by the entire record in this case as brought into this court, shows that the indorsement which is upon the back of the note was made by the original payee in order that said note might be used as collateral security at the First National Bank of Boise City to secure a loan, and was so used, and afterward returned by the bank to the company; that afterward H. E. Simmons, who had ceased to be president of the corporation, purchased said note, and took the same by assignment, not relying upon the indorsement, nor having any thought of taking it by indorsement, as an indorsee; that afterward he sold and assigned the same to the plaintiff, Warren, in settlement of his own debt; and that the said Warren took the same by assignment, and not upon the original indorsement. Hence, as was heretofore adjudged and decided in this case, Warren took as an assignee, and not as an indorsee. It is a well-settled principle of law that, where one takes the securities of a corporation in payment of an obligation of one of its officers, he does so at his peril. The principle is correctly stated in the syllabi to the decision in *Wilson v. Railway Co.,* 120 N. Y. 145, 17 Am. St. Rep. 625, 24 N. E. 384, as follows: "It seems the general rule is that one who receives from an officer of a corporation its notes or securities in payment of, or as security for, a personal debt of the officer, does so at his peril. *Prima facie,* the act is unlawful; and, unless actually authorized, the purchaser will be deemed to have taken them with knowledge of the rights of the corporation." In the case

at bar, Warren took the note, payable to the corporation, with the name of the corporation indorsed thereon by the man from whom he obtained it as president of the corporation, for the debt of the officer, and under a claim that it belonged to such officer. This fact was sufficient to put him upon inquiry. The circumstances were such as to make it natural for the plaintiff to prefer an assignment from Simmons. The circumstances were such as to make it natural for Simmons to take an assignment from the corporation. Such was the transaction between the corporation and Simmons, and such was the transaction between Simmons and Warren. Warren so alleged in his original complaint, and so understood the transaction, and introduced evidence at the first trial to prove an assignment to him from Simmons, and to Simmons from the corporation, and obtained a decision to that effect. Now, after an appeal to this court, and a decision laying down the law of the case to the effect that if the note was given without consideration in the first instance, or if the defendant should prove a breach of the covenant against encumbrances contained in the deed from the corporation to him, he would establish a defense to this action, it would be inequitable to permit the plaintiff to change the nature of his claim and say: "What I have heretofore claimed in this action is untrue. I did not take said note and mortgage by assignment. I took it by indorsement, for value, before maturity, and no defense can be made against it." Under the circumstances, the plaintiff should be held to be estopped from claiming by indorsement. To permit him to do so is to permit him to trifle with the court and its decisions. He must not blow both hot and cold. The position that he took in the first instance is inconsistent with the one he now takes. By reason of his first position, the defendant pleaded the defense that the note was given without consideration, and the other defense that the covenant against encumbrances contained in the original payee's deed to him had been broken, and, at more or less expense, appealed to this court from the first judgment against him upon his contentions, and succeeded. Plaintiff should not now be heard to contradict his first position. In his admirable work on Estoppel

(fourth edition, page 642), Mr. Bigelow says: "A party cannot, either in the course of litigation or in dealings in pais, occupy inconsistent positions. Upon that rule election is founded. 'A man shall not be allowed to approbate and reprobate.' And where a man has an election between several inconsistent courses of action, he will be confined to that which he first adopts." In *Railroad Co. v. McCarthy,* 96 U. S. 267, 24 L. ed. 696, the court said: "Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not thus permitted to amend his hold. He is estopped from doing it by a well-settled principle of law." In *Davis v. Wakelee,* 156 U. S. 689, 15 Sup. Ct. Rep. 559, 39 L. ed. 585, the court said: "It is contrary to the first principles of justice that a man should obtain an advantage over his adversary by asserting and relying upon the validity of a judgment against himself, and, in a subsequent proceeding upon such judgment, claim that it was rendered without personal service upon him. Davis may possibly have been mistaken in his conclusion that the judgment was valid, but he is conclusively presumed to know the law, and cannot speculate upon his possible ignorance of it. He obtained an order which he could only have obtained upon the theory that the judgment was valid. His statement that it was in force was equivalent to a waiver of service—a consent that the judgment should be treated as binding for the purposes of the motion—and he is now estopped to take a different position." (See, also, the following authorities: *Daniels v. Tearney,* 102 U. S. 415, 26 L. ed. 187; *Railway Co. v. Howard,* 13 How. 307, 14 L. ed. 167; *Moshier v. Frost,* 110 Ill. 206; *Strosser v. City of Ft. Wayne,* 100 Ind. 443; *Abbot v. Wilbur,* 22 La. Ann. 368; *Hodges v. Winston,* 95 Ala. 514, 11 South. 200, 36 Am. St. Rep. 241.)

The evidence produced at the trial by defendant, as I view it, established his defenses. The deed from the original payee to the defendant Stoddart, and which was the only consideration for said note and mortgage conveyed simply a grant of a right to rent water from said payee at the rate of $100 per cubic

foot per second (two dollars per miner's inch), amounting to $640 per annum. Inasmuch as the law gave to the defendant the right to rent water from said irrigation company, if it had same to furnish to him, at a reasonable rental, it would seem that there is some ground for the defendant's contention that this was no consideration for his promise to pay the irrigation company the $6,400 named in said note and mortgage.

The defendant offered in evidence, which was received, a mortgage executed by the Boise City and Nampa Irrigation, Land and Lumber Company, as mortgagor, to the Farmers' Loan and Trust Company, mortgagee, mortgaging the entire canal, water, and water rights of said mortgagor, including the water rights purported to be conveyed to said defendant by said mortgagee to secure an indebtedness of $200,000, with interest at the rate of seven per cent per annum until paid, which indebtedness was to fall due June 1, 1900. Said mortgage was duly recorded in the office of the county recorder in and for Ada county, and afterward transcribed and recorded in the office of the county recorder in and for Canyon county, and was recorded and in existence at the time said deed was given by said irrigation company to defendant. The defendant introduced evidence proving that said mortgage was unpaid and unsatisfied. The defendant thus established his·claim of breach of the warranty against encumbrances, and clearly made and sustained this defense.

Recurring to the question as to whether Simmons took the note in question by assignment or by indorsement, in my view of the law, an indorsement, to pass title to a negotiable instrument, must be delivered to the indorsee for that purpose and with that intent. There is nothing in the record before this court which shows that the original payee in said note intended to pass the title thereto to the said Simmons by indorsement. On the other hand, the record shows affirmatively and conclusively that it did not so intend, and that said Simmons did not so intend. The majority opinion makes an indorsement between these parties contrary to the intention of the parties, simply because the note had the name of the payee on the back thereof, in the face of the sworn testimony of the said Sim-

mons that he took it by assignment, and in the face of the written assignment, dated April 19, 1894, found in the transcript before us, in which, after assigning the mortgage, and describing the same, it is said, "together with the bond or obligation therein described, and the money due or to grow due thereon, with interest." Here is conclusive evidence, not only in the statements of Simmons as a witness, but in the assignment of the note and mortgage by the company to him, that it was the intention of both parties that the note should not pass to him by indorsement. The majority opinion also makes a transfer by indorsement from said Simmons to the original plaintiff, Warren, contrary to the intention of the parties, as shown by the deposition of said Simmons, who testified that he assigned it to said Warren on the fifth day of February, 1895, and in the face of the written assignment from said Simmons to said Warren dated February 5, 1895, found in the transcript, in which, after assigning the mortgage, it is said, "together with the bond or obligation therein described, and the money due or to grow due thereon with interest." What right has the district court or this court to change by judicial action the character and nature of these contracts between the parties, or the title, or character of the title, by which the mortgage and note in question passed from the original payee to said Simmons, and from said Simmons to said Warren? None. The judgment of the lower court, with the decision of this court affirming that judgment, does these things. It does more. It violates the rule that the former decision of this court established the law of the case. In the case of *City of Hastings v. Foxworthy,* 45 Neb. 676, 63 N. W. 955, 34 L. R. A. 321, it is held that the law of the case, as established on appeal, governs and binds the trial court, as well as the court of appeals, in subsequent proceedings in the same case. In the well-prepared notes to this case in 34 L. R. A. 321, it is shown that this rule is sustained by the overwhelming weight of authority. In *Lindsay v. People,* 1 Idaho, 438, it was held that a decision of the supreme court in a given case, even although it be erroneous, becomes the law of the case upon the points involved, and cannot be reviewed, altered, or changed upon a subsequent

hearing in this court. The vital point in the case was involved on the former appeal, viz., the contract by which said Warren took title; and it was there determined, upon the allegations and proofs of the plaintiff, that he took the said note by assignment, and subject to the defenses set forth in the answer of the defendant. Now, by a feat of legerdemain, the scene is changed so as to defeat the law of the case as laid down by this court on the former appeal. It is strange that the plaintiff did not know the character of his title to the note in question at the time that this suit was originally commenced, at the time of the first trial in the court below, and passing strange that it should only be discovered after the former decision of this court that he took said note by indorsement, notwithstanding the intent of the parties and the written assignments in the record. The judgment in this case is contrary to law, and violative of the cardinal principles of justice, and results in depriving one party of property to the extent of several thousand dollars after he had established his right to make complete defenses to this action. I cannot agree with my associates, and am clearly of the opinion that the judgment should be reversed.