ADOLPHUS SCOTT *et al.* v. THE GEISER MANUFAC-
TURING COMPANY *et al.*

**No. 13,797.** ( 78 Pac. 823.)

SYLLABUS BY THE COURT.

PROMISSORY NOTE—*Pleading and Practice.* In the absence of a
verified denial of an allegation of the indorsement of negotiable
paper, or of testimony to the contrary, the indorsee is pre-
sumed to be a *bona fide* holder for value and to have acquired
the paper before maturity, discharged of all equities as between
the original parties.

Error from Lane district court; EDWARD H. MADI-
SON, judge *pro tem.* First opinion filed December 1,
1904. Affirmed. Rehearing granted January 7,
1905. Second opinion filed May 6, 1905. Reaffirmed.

*J. S. Simmons,* for plaintiffs in error.

*S. I. Hale,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, C. J. : Adolphus Scott, H. G. Scott and
Fannie Scott gave several promissory notes to C. A.
Benbow for a second-hand thrashing-machine, and at
the same time executed a mortgage upon some land
to secure the payment of these notes. Before the ma-
turity of the notes two of them were indorsed and
transferred to the Geiser Manufacturing Company,
and one of them to the Parsons Band-cutter and Self-
feeder Company. The notes were not paid when
due, and the Geiser Manufacturing Company brought
an action against the Scotts to recover on the notes
held by the company, and for a foreclosure of the
mortgage. The Parsons Band-cutter and Self-feeder
Company was made a defendant because it claimed
an interest in the mortgage. The latter company

filed an answer and cross-petition setting up the note held by it, upon which it asked judgment, and also asserted a right to share in the security. The Scotts answered admitting the execution of the notes and mortgage, but alleged that the machine purchased by them was defective in several particulars and not up to the representation and warranty made when it was sold by Benbow to them. The answer also denied generally the allegations of the petition not admitted in their answer.

At the trial the Scotts undertook to prove that the thrashing-machine was not as warranted by Benbow, and to counter-claim in damages for the breach of the warranty against the indorsees of the notes; but after the evidence was introduced a demurrer thereto was sustained and judgment given against them. The ruling was correct. In the petition it was alleged that the notes were indorsed by Benbow to the present holders before maturity, and copies of the notes together with written indorsements thereon were set forth. There was no verified denial of the allegation as to the indorsement of the notes, and there was no effort to prove that the indorsements were made after the maturity of the notes. The written indorsements on the back of the notes were without date, it is true, but "where there is no evidence as to the date of an indorsement, the presumption of law is, that it was made before maturity, and that the holder is a *bona fide* holder for value." (*Rahm v. Bridge Manufactory*, 16 Kan. 530; *Lyon v. Martin*, 31 id. 411, 2 Pac. 790; *National Bank v. Elliott*, 46 id. 32, 26 Pac. 487.) It must be held, therefore, that the indorsees of the notes took them discharged of all equities between the original parties, and that the defense

of a breach of warranty, alleged to have been made by Benbow, was not available to the Scotts.

No error was committed in sustaining the demurrer to defendant's evidence, and the judgment is affirmed.

All the Justices concurring.

---

### OPINION ON REHEARING.
**No. 13,797.**   (80 Pac. 955.)

#### SYLLABUS BY THE COURT.

1. WARRANTY — *Limitation.* Ordinarily a general warranty of condition does not cover defects which are plain and obvious to the purchaser, or are at the time known to him.

2. ——— *Obvious Defects Not Included.* Representations as to the condition of a second-hand thrashing-machine known to be defective, made to a purchaser who is experienced in handling such machines and competent to repair them, and who actually did repair the machine sold for the seller and thus learned its condition before accepting it, impose no liability on the seller for breach of warranty, since an obvious defect known to the parties when the general warranty was given is not deemed to be included in it.

The opinion of the court was delivered by

JOHNSTON, C. J. : From the argument made at the first submission of this case the court was led to assume that the notes in controversy were negotiable, but it appears that they contain features which render them non-negotiable, and, hence, the transferees took them subject to all the equities existing between the original parties. The Scotts gave the paper in the purchase of a second-hand thrashing-machine from C. A. Benbow, who transferred the notes and the mortgage securing them to the Geiser Manufacturing Company and the Parsons Band-cutter and Self-feeder Company. In the action to recover on the notes their execution was admitted by the Scotts,

but they alleged that the thrashing-machine was not as represented by Benbow, and therefore they asked damages by way of counter-claim. A demurrer to the testimony offered in support of their claim was sustained by the court, and judgment given to the holders of the notes.

Was there testimony of a breach of warranty such as to furnish a basis for the recovery of damages? The parties to the transaction all understood that the machine was second-hand, out of condition, and in need of repair. The contract was not in writing, and Harry Scott, who made the purchase, was somewhat indefinite as to the representations of Benbow, and the conditions of the alleged warranty. On that question he testified as follows:

"Ques. State, in substance, what the bargain was. Ans. The machine was to be put in good running order. He had to fix it up, and he said at the time how many days it had run, and that it was not in very bad shape.

"Q. Now, describe the condition that he agreed that the machine would be put in. A. Just in as good condition as it was when new, apparently, on the outside, and fixed up insides, and paint the machine."

He also testified in substance that he was employed by Benbow to repair the machine; that he had owned and operated thrashing-machines, and had worked around them a great deal; had repaired them, and, although he called himself only "a cobbler," he stated that he was competent to do that kind of work. He spent about five days repairing this machine, taking it apart, putting in new material where it was needed, and then repainted it. He stated that he made a thorough examination of the machine, and, after completing the work, he accepted it. Another of his witnesses stated that it was in bad condition and that

an ordinary man could see that it was old and worn out by looking at it.

In view of the testimony furnished by the Scotts nothing could be awarded them under their so-called warranty. They could not claim anything for defects . which were plainly visible and equally within the knowledge of themselves and Benbow. Harry Scott, who made the purchase, had at least equal opportunity with Benbow to know the condition of the machine. He had skill, experience, and judgment. He knew it was defective and was himself employed to remedy the defects. He inspected the machine, examined and repaired its different parts, and, after all these opportunities and the knowledge received, he accepted the machine, and his own testimony made it clear that the purchase was made with knowledge of its condition. If misrepresentations were made it is manifest that the purchasers were not misled by them, as one cannot rely upon a representation which he knows to be untrue. Of course, an express warranty may be made which will cover an obvious defect; but the one in question does not come within that class. The representation was at most a general warranty of conditions, and, as was well said by the supreme court of Minnesota:

"It has always been held that a general warranty should not be considered as applying to or giving a cause of action for defects known to the parties at the time of making the warranty, and both the weight of authority and reason authorize this proposition, viz., that for representations in the terms or form of a warranty of personal property, no action will lie on account of defects actually known and understood by the purchaser at the time of the bargain." (*McCormick v. Kelly*, 28 Minn. 135, 137, 9 N. W. 675.)

Scott v. Geiser.

In the case of *Tabor v. Peters*, 74 Ala. 90, 98, 49 Am. Rep. 804, it was said :

''The rule is generally stated to be, that neither a general nor an implied warranty will cover defects which, being external and visible, are 'plain and obvious to the purchaser' upon mere inspection with the eye.''   (See, also, *Schuyler v. Russ*, 2 Cai. [N.Y.] 202 ; *Bennett v. Buchan*, 76 N. Y. 386 ; *Williams v. Ingram*, 21 Tex. 300 ; *Long et al. v. Hicks*, 2 Humph. [Tenn.] 305 ; *Jacob F. Fisher v. William Pollard*, 2 Head [Tenn.] 314, 75 Am. Dec. 740 ; *Leavitt v. Fletcher*, 60 N. H. 182 ; 2 Benj. Sales, § 938.)

A different rule would obtain if the seller had fraudulently diverted the attention of the purchaser from defects, or had artfully concealed them ; but here there is nothing tending to prove that Benbow said, or did, anything to turn the attention of Scott from the defects, or to obscure his observation of them.   On the other hand, the fullest opportunity for inspection and knowledge of the conditions was given, and it is quite probable that in revamping the machine Scott was better posted as to its condition than Benbow himself. We think the testimony of the Scotts failed to show a right to damages because of a breach of warranty, and, therefore, the court rightfully sustained the demurrer to the testimony.

The judgment is affirmed.

All the Justices concurring.