FRANCIS RAHM v. KING WROUGHT-IRON BRIDGE MANUFACTORY OF TOPEKA.

1. NEGOTIABLE PAPER; *Indorsement; Presumption.* The third paragraph of the syllabus to the opinion originally filed in this case (*ante,* p. 277,) is erroneous, and the law is the reverse of the proposition there stated. Where there is no evidence of the date of an indorsement of negotiable paper, the presumption of law is, that it was made before the maturity of the paper, and that the holder is a *bona fide* holder for value.

2. ——— *Consideration.* Proof that there was no consideration for the paper, as between the maker and payee, is not of itself alone sufficient to overthrow the presumption.

*Motion for Rehearing.*

THIS case was decided at the January Term 1876 of this court, *ante,* p. 277, where a full statement of the facts will

be found. A judgment of affirmance having been entered, *Rahm*, plaintiff below and plaintiff in error, filed a motion for a rehearing. Said motion was heard, and is now decided.

*Thacher & Stephens*, for plaintiff.

*Alfred Ennis*, for defendant.

The opinion of the court was delivered by

BREWER, J.: Since the filing of the opinion in this case the plaintiff has filed a motion for a rehearing, challenging the propositions laid down by this court in the third paragraph of the syllabus, (*ante*, p. 277,) and contending that in consequence of the errors therein the decision of the case was also erroneous. That paragraph is as follows:

"Where the indorsement of the note is in blank, and without date, and the allegation of the petition that it was indorsed before due is denied in the answer, and there is no evidence as to the date of the indorsement, any defense against the payer must also be held good against the indorser and holder."

Upon a reëxamination of the question, and a review of the authorities, we are satisfied that we were in error, and that the proposition as stated is not the law. The rule is the reverse. Where there is no evidence as to the date of an indorsement, the presumption of law is, that it was made before maturity, and that the holder is a *bona fide* holder for value. We overlooked this proposition, and noticed simply the issues. That this presumption exists, is abundantly supported by the authorities. In 1 Daniels on Negotiable Instruments, p. 608, is is said, that, "The mere possession of a negotiable instrument, produced in evidence by the indorsee, or by the assignee where no indorsement is necessary, imports *prima facie* that he acquired it *bona fide* for full value in the usual course of business, before maturity, and without notice of any circumstances impeaching its validity, and that he is the owner thereof, entitled to recover the full amount against all prior parties. In other words, the production of the instrument, and proof that it is genuine, (where in-

deed such proof is necessary,) *prima facie* establishes his case; and he may there rest it." And again, on page 610: "Countervailing proof, that the instrument was executed without consideration as between the original parties—as, for instance, where it was executed for accommodation as between them, or that the consideration, originally valid, has subsequently failed—does not impair the holder's superiority of position, and he may still rest his case upon the instrument itself, from which it will still be presumed that he acquired it in a manner entitling him to stand upon the vantage-ground of a *bona fide* holder for value." Parsons, (2 Pars. Notes and Bills, 9,) is equally emphatic: "It is undoubtedly a general presumption of law, that indorsed paper was indorsed before maturity. *And a party who denies this*, and alleges it was indorsed when over-due, must prove it; nor without this proof can he avail himself of the equities of defense." The authorities cited in note *l*, by the author, fully sustain him. Take for example, *Pinkerton v. Bailey*, 8 Wend. 600, which holds: "When the time of indorsement becomes material to let in the defense of payment, etc., it is incumbent upon the defendant to show it, and rebut the legal presumption arising from the face of the transaction." Edwards on Bills and Notes, marg. page 278, points out the same result in the following words: "Nothing appearing to the contrary, the presumption of law is, that the indorsement is cotemporaneous with the making of the note, or, at all events, antecedent to its becoming due." See also, Story on Prom. Notes, 4th ed., § 381; *James v. Chalmers*, 6 N. Y. 209; *Sperry v. Spaulding*, 45 Cal. 544; *Walker v. Davis*, 33 Me. 516; *Hall v. Allen*, 37 Ind. 541; *Sloan v. Union Banking Co.*, 67 Penn. St. 470; *Pettis v. Westlake*, 3 Scam. 535; *Mobley v. Ryan*, 14 Ill. 51. In this last case it is said, "Where an indorsement is without date the presumption of law is, that it was made before the note became due. If the time of the indorsement becomes material for the purposes of defense, it is incumbent on the maker to show that it was made after the maturity of the instrument, and thereby destroy the legal presumption." In

Byles on Bills, p. 131, the law is thus stated: "The law in the absence of any evidence on the subject presumes a transfer to have been made before the bill was due."

But it is scarcely necessary to multiply citations. The authorities are uniform. It follows therefore in this case, the notes and indorsements having been received in evidence without any proof of the date of the indorsements, that *prima facie* the plaintiff held them discharged of all equities between the original parties. To obviate this conclusion, counsel for defendant say, that when it appears that paper was fraudulently issued, this presumption is overthrown, and the burden cast on the holder to show that he is a *bona fide* holder. *Smith v. Sac County*, 11 Wall. 139, is cited in support thereof. While the law may be as claimed, we do not think this a case where the rule applies. It does not appear to us that it can fairly be said that these notes were fraudulently issued. Coleman, Rahm & Co. had a just claim against the Iola company. That company sold the major part of its assets to the defendant. This was known. The managing men of the two companies were the same. Coleman, Rahm & Co. gave up their claim against the Iola company, and received the paper of the defendant. Part of this paper was assumed by the defendant as a payment for the assets purchased. The balance, including the notes in suit, was not. It does not appear that Coleman, Rahm & Co. knew of any distinction, or that they acted otherwise than in the best of faith. The case then as it now seems to us, stands in this condition: The plaintiff holds notes of the defendant discharged of all equities against the original parties. They were issued by the managing officers of defendant, though in excess of their actual authority, and for a debt for which the defendant was not responsible. They were therefore without consideration. This defense, though good against the original parties, is not good against a *bona fide* holder for value receiving the paper before maturity. It seems to us therefore that the district court erred in finding against the plaintiff, and that the judgment, instead of being affirmed, as was

first ordered, should be *reversed*, and the case remanded for a new trial.

We are under obligations to the learned counsel for plaintiff for calling our attention to the error into which we had fallen, and enabling us to correct it before it had passed into the reports,* and thus through its general circulation possibly resulted in serious wrong. We are of course liable to make mistakes, especially under the pressure of so much business, and so many cases; and it is a source of pleasure, a satisfaction, to know that our proceedings are closely watched by able counsel, for it leads us to indulge the hope that we shall make no serious blunders without having our attention called to them.

The judgment will be reversed, and cause remanded for further proceedings.

All the Justices concurring.