WILLIAM L. CHALLISS v. JOHN A. WOODBURN *et al.*
No. 21.

1. NEGOTIABLE PAPER—*Indorsement*—*Burden of Proof.* Where there is no evidence as to the date of an indorsement of negotiable paper, the presumption of law is that it was made before maturity and that the holder is a *bona fide* holder for value ; and the party who denies this must prove it, and without such proof he cannot avail himself of the equities of defenses.

2. APPEAL—*Review of Evidence.* Where the special findings and general verdict of a jury are clearly contrary to the evidence, there being a total failure of testimony upon the point necessary to sustain them, they will be set àside, although they may have been approved by the trial court.

MEMORANDUM.—Error from Nemaha district court ; R. C. BASSETT, judge. Action by William L. Challiss against John A. Woodburn and others to foreclose a mortgage. Judgment for defendants. Plaintiff brings the case to this court. Reversed. The opinion herein was filed January 9, 1896.

The statement of the case, as made by GILKESON, P. J., is as follows :

Action by Challiss, as plaintiff below, to recover upon a note of $1,000 and foreclose a mortgage on the north half of the northwest quarter of section 27, and south half of southwest quarter of section 22, and the south 26⅔ acres of the north half of the southwest quarter of section 22, township 4, range 14, Nemaha county, Kansas, given by John A. Woodburn and Mary F. Woodburn, his wife, to George Lamberson, jr., to secure said note, and by George Lamberson, jr., transferred by indorsement in blank to Challiss. The undisputed facts in this case, as disclosed by the record, are : That in April, 1883, George Lamberson, jr., and his wife borrowed of the Wetmore State Bank the sum

of $1,000, giving their note therefor; that the plaintiff, Challiss, signed this note with them as security. Shortly after this, May 22, 1883, John A. Woodburn and wife, being indebted to George Lamberson, jr., in the sum of $1,000, made, executed and delivered to him their note for that amount secured by mortgage on the property above mentioned. This note was by Lamberson indorsed to said Challiss as collateral security to indemnify him as their security to the said Bank of Wetmore. The note given by Lamberson and wife to the bank was renewed from time to time until some time in 1889, when it was paid by Challiss to the bank, Lamberson having become insolvent; that in the early part of 1884 Challiss, surrendered this note to George Lamberson, and under an agreement that another note and mortgage should be substituted therefor, and released of record this mortgage on the 16th day of April, 1884. On August 26, 1884, Woodburn and wife mortgaged this same property to Gilbert & Gay for the sum of $2,000, and also, at the same time, gave a mortgage to Bartlett Bros. for the sum of $300 to secure 10 certain coupons of $30 each; and at the same time executed their note to Lamberson, jr., for the sum of $1,000, securing it by a mortgage on the same land; and in the said last-mentioned mortgage it is stipulated that it was a second mortgage, subject to the mortgage of Gilbert & Gay for the sum of $2,000. This note was transferred to the plaintiff, Challiss, by George Lamberson, jr., indorsing his name thereon in pursuance to the agreement referred to, and indemnified him upon Lamberson and wife's indebtedness to the bank, which had not been paid. This note and mortgage are the ones in controversy in this action. On April 2, 1885, Woodburn and wife conveyed the land in

controversy to George Lamberson, jr., by warranty deed, in which it is expressly stated that the land conveyed was subject to two mortgages, one for $2,-000 and one for $1,000. On August 26, 1886, Lamberson and wife conveyed said land to one Charles D. Bidwell, by warranty deed. This deed recites that the land is subject to a $2,000 mortgage to Gilbert & Gay and $300 mortgage to Bartlett Bros., both of which were assumed by Bidwell. No mention is made of the $1,000 mortgage. On August 15, 1890, Bidwell and wife mortgaged said property to one John Worthy, in the sum of $2,500. The last note given by Woodburn and wife to Lamberson, and by him indorsed to Challiss, was so indorsed about the 1st of September, 1884, and has been in Challiss's possession ever since. The petition, amended petition and replies filed by Challiss set forth the facts as we have stated them, either by averment or admission. The execution of the note sued upon is not put in issue by the pleadings, and, in fact, is admitted.

Defendant Bidwell, for his defense, pleads : First, general denial. Second. Denies that the note sued on was, on the 1st of September, 1884, or at any time, assigned by George Lamberson, jr., to Challiss in writing, and as collateral security to Challiss, and denies that Lamberson ever verbally assigned to Challiss the mortgage in controversy. Third. That when Lamberson purchased the property of Woodburn, on the 2d of April, 1885, it was subject to the two mortgages aforesaid, one of which is the mortgage sued upon in this action, but that it was expressly agreed between Lamberson and Woodburn that the note and mortgage sued on should be satisfied and canceled of record and delivered to Woodburn, it having been paid in full; that at the time he so purchased the

property, Lamberson informed him that the mortgage of $1,000 had been fully paid and satisfied, but that he (Lamberson) had omitted to cancel it of record, but that he would do so in a few days; that Challiss had full knowledge of all of the facts above set forth; and that Lamberson, at this time, was in Challiss's employ, and they had conspired together for the purpose of cheating and defrauding this defendant, and of unlawfully establishing a lien upon the real estate, and that Lamberson did not, until recently, place in Challiss's possession the note and mortgage sued upon. This answer was verified as to the second and third counts or paragraphs.

Sarah Bidwell, for her defense, filed an unverified general denial. John A. and Mary F. Woodburn filed separate defenses, consisting of, *first*, a general denial; and, *second*, that said defendants further allege that they have paid the note for $1,000, set up and sued on herein, as stated in the petition herein, and that the defendant Lamberson promised and agreed to give them said note and satisfy said mortgage, of all of which said plaintiff, William L. Challiss, had due notice when he received said note from defendant Lamberson and consented to the same. This is verified as to the first paragraph.

Defendant Worthy filed an answer, setting up, *first*, a general denial; and, *second*, his lien for $2,500, and that at the time the mortgage sued upon in this action was given by Woodburn to Lamberson there was a mortgage of $2,500 on the same land to Gilbert & Gay; and that this mortgage to Gilbert & Gay is the one expressly admitted in the mortgage given by the Woodburns to Lamberson; that the money received from the loan made by him to Bidwell was used for the payment of this mortgage of Gilbert & Gay; that

his mortgage is not due — and asks to be subrogated to the rights of Gilbert & Gay. This answer is unverified. Challiss, for reply to Bidwell, admits the execution of the deeds, denies each and every other allegation of the answer, and expressly denies fraud and conspiracy. His reply to the answer of Worthy is a general denial, and to the answer of Woodburn and wife a general denial, all unverified.

Trial had before court and jury. General verdict and special findings returned, as follows :

General verdict —

" We, the jury duly impaneled and sworn to try this matter submitted to us in the above-entitled cause, do on our oath find for the defendants, John A. Woodburn, Mary F. Woodburn, Charles D. Bidwell, and Sarah L. Bidwell."

Special findings or answers to questions, as follows :

" Ques. 1. On or about what date did the plaintiff come into the possession of the note sued on, given by John A. and Mary F. Woodburn to George Lamberson, jr., and indorsed by Lamberson to plaintiff? A. On or about December 27, 1889.

" Q. 2. Did the plaintiff, at the time of receiving the note referred to in question No. 1, surrender to Lamberson a note then held by plaintiff for $1,000, signed by John A. and Mary F. Woodburn, and payable to George Lamberson, jr., in consideration of his receiving the note referred to in question No. 1? A. No.

" Q. 3. Did the plaintiff, at or prior to the time when the note sued on was transferred to him by Lamberson, have notice of any payment made by Woodburns to Lamberson? A. Yes.

" Q. 4. Did the plaintiff, after receiving the note referred to in question No. 1, have notice of or consent to the conveyance made by John A. and Mary F. Woodburn to George Lamberson, jr., and Henrietta C. Lamberson to Charles Bidwell? A. Yes."

Q. 5 appears to have been stricken out, and was not inserted.

"Q. 6. Did plaintiff, at any time after coming into possession of note referred to in question No. 1, instruct or authorize George Lamberson, jr., to release the mortgage which was given to secure said note, or to represent that said mortgage had been satisfied? A. No.

"Q. 7. Did plaintiff, at any time before or after coming into possession of the note referred to in question No. 1, either conspire or connive with George Lamberson, jr., for the purpose of setting up any false claim or defrauding defendants Woodburn, the defendants Bidwell, or defendant Worthy?   A.   Yes.

"Q. 8. Did the plaintiff pay off the indebtedness of George Lamberson, jr., and Henrietta C. Lamberson to the Wetmore State Bank, and for which plaintiff was liable as surety, by giving his own note for the amount, and which was accepted by said bank?   A. Yes."

Motion to set aside special findings and general verdict as being inconsistent with each other, and for judgment for plaintiff, was filed and overruled.   Motion for a new trial was filed and overruled, and thereupon the court entered judgment as follows:

"It is therefore ordered, adjudged and decreed by the court now here, that the said defendants Woodburn, John A. and Mary F. Woodburn, Charles D. Bidwell, Sarah L. Bidwell and John Worthy do have and recover of and from the plaintiff, William L. Challiss, their costs herein expended, taxed at $_____, and for all of which judgment is hereby rendered, and for which let execution issue.   It is further ordered, adjudged and decreed by the court, that the plaintiff, William L. Challiss, do have and recover of and from the said George Lamberson, jr., and Henrietta C. Lamberson the sum of $1,118.33, together with 6 per cent.

42—2 APP.

interest thereon from this date, and costs of this action.''

Challiss brings the case here for review.

*W. L. Bailey*, and *J. M. Challiss*, for plaintiff in error.

*B. F. Hudson*, for defendants in error.

The opinion of the court was delivered by

GILKESON, P. J.: There are but two questions necessary to be decided in this case: *First*, That the court erred in giving certain instructions; *second*, that the verdict and special findings are not supported by and are contrary to the evidence. The instruction complained of is as follows:

''The verified answer of the defendant Bidwell therefore puts in issue the assignment of said note to the plaintiff, and, as to that fact, the burden of proof is upon the plaintiff, and he must establish that the notes and mortgage sued upon were assigned to him as alleged in the petition, and in good faith, for a valuable consideration.''

In this we think the court erred, and, under the pleadings and testimony in this case, the instruction was not applicable.

'' Where there is no evidence as to the date of an indorsement, the presumption of law is that it was made before maturity, and that the holder is a *bona fide* holder for value.'' (*Rahm v. Bridge Manufactory*, 16 Kan. 530.) See, also, *Ecton v. Harlan*, 20 Kan. 452; *Reynolds v. Thomas*, 28 id. 810; *Lyon v. Martin*, 31 id. 411; *Mann v. National Bank*, 34 id. 746; *National Bank v. Elliott*, 46 id. 34.

'' It is undoubtedly a general presumption of law that indorsed paper was indorsed before maturity. *And a party who denies this*, and alleges it was indorsed when over due, must prove it; nor without

this proof can he avail himself of the equities of defense. . . . 'When the time of indorsement becomes material to let in the defense of payment, etc., it is incumbent upon the defendant to show it and rebut the legal presumption arising from the face of the transaction.'" (*Rahm v. Bridge Manufactory*, 16 Kan. 530.) See, also, *Mann v. National Bank*, 34 Kan. 746 ; *Ecton v. Harlan*, 20 id. 452.

There was no such evidence in this case ; nothing that would overturn the *prima facie* case made by the pleadings and evidence of the plaintiff, and certainly nothing that would shift the burden of the proof back from the defendants to the plaintiff. The execution of the note is admitted. No fraud or illegality of the transaction is alleged, or attempted to be proven. In fact, the only thing attempted to be denied is, that the indorsement on the note was not made in writing at the time stated, and never was made ; yet the signature of the indorser is admitted to be genuine. There is not a scintilla of evidence contradicting the direct and positive testimony of the plaintiff that it was made on the 1st of September, 1884, and the testimony of the indorser himself that it was indorsed within a few days after it was made. In fact, this is all the testimony of any kind that refers to this date. Upon this proposition it is idle, therefore, to make further citations. The authorities are uniform. This note, then, was held by the plaintiff discharged of all equities between the maker and the payee.

There remains, then, but a second question to be disposed of, *i. e.*, that the verdict and special findings are not supported by, and are contrary to, the evidence. From what we have already said, we are compelled to hold that the answer to special finding or question No. 1 is without foundation upon any testimony adduced in this case. No. 2 is in the same

condition. The testimony of the plaintiff is undisputed that he did, about the time or just before this note was given, deliver to Lamberson, at the request of him and Woodburn, such a note, under an arrangement that he was to receive another note in lieu thereof, and that he did receive in fulfilment of that agreement or arrangement the note sued upon in this case. The testimony of the mortgage of May 22, 1883, together with a release thereof by Lamberson a short time before this note was given, together with the fact that the land was about this time mortgaged to Gilbert & Gay, all corroborated plaintiff's testimony. No. 3 cannot, upon any theory we have been able to devise, be sustained. It is an undisputed fact that the note was transferred and indorsed to Challiss not later than September 1, 1884. The defendant Woodburn does not claim that his note was paid until April 2, 1885, when he sold the land to Lamberson, yet the deed given at this time recites that this identical mortgage (and it is so admitted in the testimony) was at that time a valid lien upon the land. This, together with the uncontradicted testimony of the plaintiff that he knew nothing of any claim of payment, and in fact did not know of the transferring of this land until after it was so transferred, seems to us to constitute a total failure of proof upon this proposition. Even if we were to take the conversation between Lamberson and Woodburn at the time of this sale as binding upon Challiss, it is not shown that it was ever brought to the plaintiff's knowledge. No. 4: We have failed to find any witness that has testified to any fact that even squints toward such a condition of affairs, and, from what we have said in reference to No. 3, this finding cannot be sustained; and the answer given to No. 6 is not only inconsist-

ent with this finding, but negatives the propositions therein contained.    No. 7 is wholly without foundation.

"The law presumes, in the absence of evidence to the contrary, that the business transactions of every man are done in good faith and for an honest purpose, and any one who alleges that such acts are done in bad faith, or for a dishonest and fraudulent purpose, takes upon himself the business of showing the same."

This rule is substantially laid down by the court in its fourteenth instruction, and is unquestionably the law. (*Baughman v. Penn*, 33 Kan. 504.)    "Fraud is never presumed, but must be established by evidence, and no mere suspicion is the equivalent of proof."

We think it is wholly unnecessary to discuss the evidence or the facts in this case further.    We cannot see what good or useful pupose can result therefrom.    The very utmost that can be said of the evidence in this case is, that it possibly raises a suspicion against Lamberson, but it does not go even that far as to the plaintiff, Challiss.    We cannot agree with counsel for the defendants in error that there are many remarkable and suspicious facts and circumstances proven in this case.    His construction placed upon the testimony is ingenious but not tenable, and we think it arises from his zeal in behalf of his clients, and the language used in his argument is much stronger than is warranted by the facts in this case.

After a careful and thorough examination of the record, we are compelled to hold that, upon all the material facts in this case necessary to sustain the special findings, general verdict of the jury, and the judgment rendered, there is a total failure of proof; and, unless an entirely different condition of affairs can be proven upon the rehearing of this case, we would suggest that the judgment herein should be

in favor of the plaintiff and against the defendants George Lamberson, jr., John A. and Mary F. Woodburn, for the amount paid by Challiss to the Bank of Wetmore, with legal interest thereon from the date of payment; that the mortgage be declared a lien upon the land, subject and inferior to a prior lien in favor of the defendant Worthy for the amount actually paid by him or used by the defendant Bidwell in the discharge of the $2,000 mortgage to Gilbert & Gay, to whose rights under this mortgage he should be subrogated.

The judgment of the district court will therefore be reversed, and the case remanded for further proceedings in accordance with the views herein expressed.

All the Judges concurring.