[Civil No. 2111.   Filed February 17, 1925.]

[233 Pac. 1104.]

H. C. CROZIER and JOSEPH MILES, Appellants, v. MARIANA B. NORIEGA, Administrator of the Estate of FRANCISCO NORIEGA, Deceased, Appellee.

1. MASTER AND SERVANT — ABSENCE OF NEGLIGENCE OF INJURED EMPLOYEE MUST BE AFFIRMATIVELY SHOWN, UNDER EMPLOYERS' LIABILITY LAW.—In action, under Employers' Liability Law, plaintiff must allege and prove affirmatively that accident was not due to negligence of injured party.

2. APPEAL AND ERROR—FINDING AS TO NEGLIGENCE, APPROVED BY TRIAL COURT, NOT DISTURBED. — In action, under Employers' Liability Law, for death caused in mine explosion, which might have been caused either by delayed fuse, or deceased's carelessness in digging into hole with iron-pointed candlestick, *held* that a finding for plaintiff, approved by the trial court, would not be disturbed on appeal, in spite of testimony as to admissions of negligence; it being not unreasonable, under all the circumstances, for jury to refuse to believe such testimony.

See (1) 26 **Cyc.**, p. 1419.   (2) 4 **C. J.**, p. 866.

APPEAL from a judgment of the Superior Court of the County of Maricopa. Joseph S. Jenckes, Judge. Affirmed.

1. Burden of proving contributory negligence under Employers' Liability Acts, see note in 33 **L. R. A. (N. S.)** 1218.

Messrs. Hayes, Stanford, Laney & Allee, for Appellants.

Messrs. Jennings & Strouse and Mr. Wiley E. Jones, for Appellee.

LOCKWOOD, J.—Plaintiff, Mariana B. Noriega, as administrator of the estate of Francisco Noriega, deceased, brought suit against H. C. Crozier and Joseph Miles, under the Employers' Liability Law (Civ. Code 1913, pars. 3153–3179), for injuries sustained by the decedent which resulted in his death. The injuries occurred in a certain mine owned by defendants, situated in Pinal county, Arizona. The complaint sets up the usual allegations.

The defendants admit the ownership of the property, but allege substantially that the injury was due solely to the negligence of decedent himself. There are but two assignments of error and they raise the same real issue, viz.: That the evidence is not sufficient to sustain the verdict of the jury.

There is very little dispute in the testimony as to what actually happened; the difficulty being rather over a lack of evidence than a conflict thereof. With the exception of certain alleged admissions of decedent after his injury, we think the facts, so far as they are shown by the witnesses, are practically agreed upon.

It appears that decedent, together with one Refugio Santos, was employed by defendant Miles in the performance of annual assessment work upon the mining claims mentioned in the complaint. Both Santos and Noriega were experienced miners. The three men went to work in a tunnel, then twenty-four feet long. About 11 o'clock in the morning Miles and Noriega left the tunnel, and Santos loaded seven holes which had been drilled in the breast of

the tunnel. The holes were loaded in the proper manner and the fuses ignited by Santos, Noriega and Miles being outside the tunnel close to the mouth. The fuses, in the ordinary course of affairs, would have burned about a minute and a half. Santos immediately left the tunnel and the three men stood and counted the explosions as they occurred. Five holes exploded; two did not. This was known to all of the three. About an hour and a quarter later Santos returned and examined the missed holes. He took hold of the fuses with his fingers, examined them with great care, and was sure there was no fire in them or in the missed holes. He then left the tunnel and told Noriega the conditions and that he (Santos) was going to get some new fuses, warning Noriega not to touch the holes and to stay outside of the tunnel, but, if he did go in, to be very careful. Noriega, however, took his candlestick, lit it and went inside. Santos started to get the fuses and caps to explode the two missed holes in the proper manner, which the undisputed testimony shows is by putting more powder and a primer on the top of the missed hole and shooting it, and a short time thereafter heard the explosion that injured Noriega.

There is no positive evidence as to just how long it was after Noriega went into the tunnel before the explosion occurred, but it was at best not over two or three minutes, and there is absolutely no direct evidence as to what occurred in the tunnel after Noriega entered it to the time of the explosion.

Upon hearing the explosion, Santos went back to help Noriega, and found him face down six or eight feet from the entrance to the tunnel. He, however, got up and walked out a moment later. The hole which exploded and caused the injury was about

four and one-half feet from the floor of the tunnel. Noriega's wounds were chiefly in the face, right arm, neck and chest, though the left arm and hand were also somewhat hurt. There were no injuries below the knees. Noriega was taken to the hospital in Hayden and then removed to Phoenix, where he died as a result of the injuries, nine days after the accident.

So far all the evidence is in substantial agreement. The difference, so far as it is material to the determination of the case, depends upon the testimony of the witnesses Miles, Piper and Santos regarding alleged admissions and statements which Noriega made immediatetly after the accident and while in the hospital. Defendant Miles states positively Noriega told him immediately after the accident that he (Noriega) was digging in the hole with his candlestick and it exploded and further that it was all his own fault, and no one was to blame. He also says he heard Noriega telling his wife and father-in-law, while in the hospital, how it happened, but did not give that conversation in detail. The witness Piper testified that a few minutes after the accident he saw Noriega and spoke to him; that Noriega recognized him and a few moments later he asked, "How did this happen, Frank, was you digging the hole out?" and Noriega replied, "Yes; I was digging it out with the candlestick and it went off." The witness Santos testified, in answer to the question, "What did Francisco Noriega say, if anything, about what he was doing when the explosion took place?" "He told me that he did not know how it happened," and later on, "He didn't tell me any more after I asked him how it happened, that he did not know it did it, and then he told me to take charge of his children." The evidence shows the decedent Noriega spoke Spanish and fairly good

English, but Santos spoke only Spanish. This is substantially all of the evidence the jury had to assist them in determining whether the accident was due to the negligence of Noriega or not.

We have held repeatedly that, under the Employers' Liability Law, it is incumbent upon plaintiff to allege and prove affirmatively that the accident was not due to the negligence of the injured party. *Calumet & Arizona Mining Co.* v. *Chambers,* 20 Ariz. 54, 176 Pac. 839; *Southwest Cotton Co.* v. *Ryan,* 22 Ariz. 520, 199 Pac. 124.

In discussing what is necessary to sustain that burden, we have said in *Calumet & Arizona Mining Co.* v. *Winters,* 25 Ariz. 483, 219 Pac. 585:

"So, while it may be the evidence fails to show Naylor's negligence did not cause his death, it likewise fails to show that his negligence did cause his death. When such is the case, the courts do not halt the proceeding and send the employee away empty handed, but resort to a rule of universal human experience and observation, and that is that, when a person is found dead, and the cause or means of death is not discoverable or ascertainable, the presumption will be indulged that the death was natural or accidental, and not suicidal. As was said by Mr. Justice BAKER, speaking for the court, in *Davis* v. *Boggs,* 22 Ariz. 497, at page 508, 199 Pac. 116, at page 120:

" 'The law presumes that the injured party was in the exercise of due care until the contrary is made to appear. The presumption is founded on a law of nature, and has for its motives the fear of pain, maiming, and death.'

"This well-known rule that suicide will not be presumed, and that, as between accident and suicide, the law supposes accident, has been applied in a great number of cases arising under compensation statutes."

Our Employers' Liability Law is, though unique in form, undoubtedly to be classed as a compensa-

tion act. *Arizona Copper Co.* v. *Hammer*, 250 U. S. 400, 6 A. L. R. 1537, 63 L. Ed. 1058, 39 Sup. Ct. Rep. 553 (see, also, Rose's U. S. Notes Supp.).

It may be true, as suggested by counsel for defendants in his argument, that under the facts of the Winters case it was not necessary to make this statement of law, as there was evidence tending to show Naylor's negligence did not cause his death. We, however, do not hesitate, in this action, to reaffirm such statement in the Winters case as being the law of Arizona. The contrary doctrine would in many cases work serious injustice, and be contrary to the general spirit of our Constitution. There is no doubt that its whole theory is that, in unavoidable accidents, the industry should bear the burden.

Suppose, as happened recently in Arizona, in an instance well known to the writer of this opinion, an explosion occurs in a manufacturing plant. Four men are instantly killed. The industry is one which is classified as hazardous and is obviously of such a nature that either carelessness or natural causes might have produced the explosion. There is not a scintilla of evidence as to which it was, however. It is not possible, though, that it could be caused by the negligence of each one of the four dead men. Suit cannot be brought under the Workmen's Compensation Act, for the injured parties had no time to elect that remedy before they were hurled into eternity. *Behringer* v. *Inspiration etc. Co.*, 17 Ariz. 232, 149 Pac. 1065. It cannot be maintained successfully under the common law, for no one can say how it occurred, and, if we are to uphold the doctrine presented by defendant in this case, it would be useless under the Employers' Liability Law. The families of these four men are left utterly unprotected, and just this type of case can and does happen repeatedly. We do not think such a rule is

consonant with the spirit of our humane public
policy and decline to follow it.

The undisputed evidence shows that the accident
might have occurred, either by a delayed fuse ex-
ploding, a thing which may occur at any time and
for any reason, or, so far as human knowledge goes,
no reason at all, or else it may have been, as is the
theory of defendant, due to the almost criminal neg-
ligence of Noriega as an experienced miner in dig-
ging into the hole with an iron-pointed candlestick.
Either theory is consonant with the undisputed facts
in the case, and, if this were all we had before us,
the case would fall squarely within the principles
announced in the Winters case.

On the other hand, if we are to accept it as true
that Noriega did say the accident was caused by
his digging into the unexplored hole with an iron
candlestick, the presumption of fact above referred
to would be overcome by positive evidence of negli-
gence and in such case plaintiff could not recover.

It is evident after reading the instructions of the
court that the jury refused to accept the testimony
of Miles and Piper on that point, but cast it entirely
aside. Can we say, as an appellate court, they had
no right to do so? It may be that, if we were sit-
ting as jurors to determine the facts on this evi-
dence, we would find in favor of defendants, but
such is not our function. *Denver etc. Co.* v. *Brown,*
57 Colo. 484, 143 Pac. 364. It is only where no evi-
dence sustains it, or where it is contrary to the
overwhelming weight thereof, that we have the right
to disregard the verdict of a jury. *Challis* v. *Wood-
burn,* 2 Kan. App. 652, 43 Pac. 792; *Houston etc. R.
Co.* v. *Loeffler* (Tex. Civ. App.), 59 S. W. 558. Par-
ticularly is this true when the issue is as to the
credibility of witnesses, even though not directly con-
tradicted.

In *Davis* v. *Judson,* 159 Cal. 121, 128, 113 Pac. 147, 150, the court says: :

"While it is the general rule that the uncontradicted testimony of a witness to a particular fact may not be disregarded, but should be accepted by the court as proof of the fact, this rule has its exceptions. The most positive testimony of a witness may be contradicted by inherent improbabilities as to its accuracy contained in the witness' own statement of the transaction, or there may be circumstances in evidence in connection with the matter, which satisfy the court of its falsity. The manner of the witness in testifying may impress the court with a doubt as to the accuracy of his statement, and influence it to disregard his positive testimony as to a particular fact, and, as it is within the province of the trial court to determine what credit and weight shall be given to the testimony of any witness, this court cannot control its finding or conclusion denying the testimony credence, unless it appears that there are no matters or circumstances which at all impair its accuracy."

See, also, *Clark* v. *Tulare Lake, etc.,* 14 Cal. App. 414, 112 Pac. 564; *Pierce Loan Co.* v. *Killian,* 153 Mo. App. 106, 132 S. W. 280. And also is this true when, on a motion for new trial, the trial court which has heard the evidence refuses to set the verdict aside. *Morrissey* v. *Guaranty Savings, etc.,* 81 Minn. 426, 84 N. W. 219; *Wiener* v. *New York Cent.,* 8 N. Y. Supp. 403; *Bannon* v. *Insurance Co. of America,* 115 Wis. 250, 91 N. W. 666.

The only question for us is to determine whether upon the whole record the testimony was of such a nature that a reasonable man could not refuse to accept the evidence of Piper and Miles as to the statements alleged to have been made to them by Noriega.

The witness Miles was one of the defendants and therefore an interested party, and his testimony in

regard to certain conditions he found later on, after the accident, was of such a nature that we cannot say the jury were absolutely unjustified in allowing it to affect their opinion of his credibility in general.

The witness Piper was, so far as the record shows, disinterested. There is, however, the testimony of the witness Santos to the effect that Noriega said he did not know how the accident happened. If the jury believed Santos, as it was their province to do, we cannot say, as a matter of law, they could not believe that, if Noriega had denied knowledge of the cause of the explosion to Santos, he was not likely to give a reason therefor, at practically the same time, to Piper, and they may also have taken into consideration that, although the defendant Miles claimed he heard Noriega make similar statements regarding the accident to his wife and father-in-law, in the presence of the doctor, although the wife and doctor were present, apparently, in court, they were not asked by defendant in regard to these alleged statements. Further, there are many things which might affect the belief of a trial judge or jury as to the credibility of a witness, which cannot appear in the record, or come before us.

The case is not without its difficulties, and, if we were trying the case as jurors, it is possible, if not probable, as we have said before, that we would have returned a verdict for defendants on the facts, but this is not our function. The jury found the facts in favor of the plaintiff. The trial court, apparently, did not feel that such findings were not reasonably supported by the evidence, and, after an examination of the whole record, we do not feel we are justified, as a matter of law, in saying the jurors were bound to believe the testimony which they obviously rejected.

27 Ariz.—27

For the foregoing reasons, we cannot say the trial judge erred in refusing to direct a verdict for defendants or in overruling their motion for a new trial, and the judgment is affirmed.

McALISTER, C. J., and ROSS, J., concur.