[Civil No. 3309.   Filed November 27, 1933.]

[27 Pac. (2d) 143.]

J. B. PETERS, Appellant, v. PIMA MERCANTILE COMPANY, INC., a Corporation, and SIDNEY McNEIL, Appellees.

Mr. Otto E. Myrland, for Appellant.

Mr. S. L. Pattee and Messrs. Kingan, Darnell & Nave, for Appellees.

McALISTER, J.— J. B. Peters brought this action against the Pima Mercantile Company, a corporation, and Sidney McNeil to recover damages received by him in an automobile accident. He won a judgment against Sidney McNeil but was unsuccessful as against the Pima Mercantile Company. The jury returned a verdict in its favor and the plaintiff has appealed from the judgment rendered thereon.

The record discloses that at the close of the testimony the Pima Mercantile Company moved for an instructed verdict and that the court granted this motion upon the ground that the evidence disclosed no liability whatever on its part for the injuries sustained by the plaintiff. The only assignment is that the court erred in directing this verdict, and to show that the trial court committed error in taking this action appellant has had transcribed and brought here the testimony of two of the ten witnesses who testified at the trial, namely, J. J. McNeil, the president of the company, and Sidney McNeil, one of the defendants. With only this portion of the evidence before us appellee suggests that this court cannot determine whether the trial court's ruling granting the motion was correct or not. Undoubtedly this court should have before it all the testimony the trial court had bearing on the question of appellee's liability before it sets aside or reverses a ruling that it was not liable, for there is no other way by which that action can be fairly and properly adjudged.

"Where error is alleged in the action of the court in taking, or refusing to take, the case from the jury," according to the text in 4 C. J. 199, "all the evidence should be included," and this rule is sustained by numerous decisions where the question has arisen.

In *Texas & Pacific Ry. Co. v. Cox,* 145 U. S. 593, 12 Sup. Ct. 905, 36 L. Ed. 829, the United States Supreme Court said:

"The bill of exceptions does not purport to contain all the evidence, and it would be improper to hold that the court should have directed a verdict for defendants for want of that which may have existed."

The question was passed on by this court in *Richardson* v. *Powers,* 11 Ariz. 31, 89 Pac. 542. That was an action for malicious prosecution and in the abstract was included the testimony of the defendant only. In refusing to set aside an order of the trial court directing a verdict upon the ground that the evidence was insufficient to sustain the plaintiff's cause of action, the court said:

"Upon the record as it is before us, and without the testimony in the case, we could not, in any event, assume that the testimony as a whole did not warrant the action of the trial court in directing a verdict for the defendant. . . . Without the testimony taken at the trial before us, we cannot say that the action of the court was erroneous."

Of the numerous authorities to the same effect the following are cited: *Kitzman* v. *Kitzman,* 115 Iowa 227, 88 N. W. 341; *Atterberry* v. *Portland & W. V. Ry. Co.,* 18 Or. 85, 22 Pac. 527; *Collins* v. *Breen,* 75 Wis. 606, 44 N. W. 769; *Smith* v. *Highland Mary Mining, Milling & Power Co.,* 82 Colo. 288, 259 Pac. 1025; *Cadoma Sheep Co.* v. *Doughaard,* 41 Wyo. 502, 287 Pac. 436.

Appellant contends, however, that if appellee was not satisfied with his statement of facts it became

its duty under section 3869, Revised Code of 1928, to "set forth such amendments as" it deemed "necessary to make it correct and sufficient," and that since it did not do this it cannot now be heard to say that his is not sufficient. This section does provide that when a party desires to procure a review of certain rulings only he may cause his statement of facts to contain merely these rulings and so much of the testimony and proceedings as is necessary to review them and that when such statement is prepared, "the opposite party in his statement shall either agree that the same is correct and sufficient or shall set forth such amendments as he may deem necessary to make it correct and sufficient and the trial judge shall either certify thereto that the same is correct and sufficient or shall amend, certify and file it, together with the statement of the opposite party."

The opposing party in this case neither agreed that the statement was correct and sufficient, nor set forth such amendments as it deemed necessary to make it so, but the court certified that it was correct, though it failed to state that it was sufficient to procure a review of the ruling directing a verdict for appellee upon the ground that it was not liable for appellant's injuries. It may be, and undoubtedly is, true that the testimony of these two witnesses was correctly transcribed, but this is far from saying that what they said is in itself all this court needs to determine properly the correctness of the ruling. While a litigant may under section 3869 procure a review of any special ruling of the trial court by bringing here that ruling and enough only of the testimony and proceedings to enable this court to pass on it, the duty rests upon the appellant to submit to this court, not merely a properly authenticated transcript or statement of facts, but one which the trial court, at least in the absence of an agreement by the opposite party, has certified is sufficient for that particular purpose.

The fact that appellee failed either to agree to or amend it, provided the opportunity to do so was presented, would not interfere with this court's considering it, if the trial court had said in its certificate that the statement of facts was sufficient for the purpose.

In both his brief and oral argument appellant has proceeded upon the theory that the case is here under section 3869, that is, to procure a review of one particular ruling or order of the trial court, but in authenticating the statement of facts or transcript he has followed the provisions of section 3866 of the Revised Code of 1928 under which all the testimony is brought up. When a record comes here under the latter it is necessary that the court certify only that the statement of facts or transcript is correct because in these cases all the evidence, not merely a part of it, is included therein. But when one is brought here under section 3869 only a part of the testimony is incorporated in the statement of facts or transcript and it then becomes necessary, unless the opposite party has agreed to it, that the court certify not merely that it is correct but that it is sufficient to procure a review of the ruling complained of.

However, notwithstanding the fact that we cannot set aside or reverse the order of the trial court on a part only of the testimony that bore, or, so far as the record discloses, might have borne, on the question of appellee's liability for appellant's injuries, we have read the statement of facts brought here, the testimony of the two McNeils, and are of the view that it does not show that the court erred in directing a verdict in favor of appellee. It discloses that the Pima Mercantile Company is a corporation doing a general mercantile business at Marana, Arizona, a place on the Casa Grande highway, twenty-three miles west of Tucson; that the president of the company, J. J. McNeil, manages the business, and his son, Sid-

ney McNeil, a young man about twenty years of age, is employed by the company to work in the store and do anything around the place, including the driving of the company's truck; that on July 9, 1931, the father sent Sidney to Tucson in a truck belonging to the company for merchandise for the store and that after reaching the wholesale district of the city where he was to get the articles he had gone for and placing a part of them in the truck, he drove to the Veterinary Hospital of Dr. Hicks, some twenty-four or twenty-five blocks from that point, to see about a dog he had taken there some days before for treatment; that he found the dog in a condition to be taken away and after placing it in the truck he started back to the wholesale district to pick up the remainder of the merchandise to take out to Marana; that when he had reached a point a block or so from the hospital the truck he was driving and that of appellant collided, the result being that appellant was injured and later brought this action to recover the damages suffered by him in the accident.

It appears further that the trip from the wholesale district to Dr. Hicks' hospital to obtain the dog was taken without any knowledge on the part of J. J. McNeil, the manager of the store, whose only instructions to Sidney before he left for Tucson that day were to go there and bring back certain articles of merchandise, no reference whatever being made to the dog which he, through permission of his father, had taken to the hospital in the latter's private car some time prior to July 9th after the close of business for that day. The dog belonged to a nine year old boy at Marana, whose parents were customers of the store but, according to J. J. McNeil, not very good ones. His father had been section foreman but was then laid off and through permission of the Railroad Company the family was living in the station at Marana to save rent. The road traveled by Sidney

that day to Tucson and its wholesale district was the one usually taken by him in going there for merchandise.

It is clear from these facts that his mission to Tucson that day was to procure certain articles of merchandise for the store and take them to Marana in the truck, and, this being true, it becomes plain that in taking the trip to the hospital for the dog he was not doing what he was instructed to do, but for that period of time stepped aside from his employment to perform an independent act of his own in no way connected with the work he had been directed by his employer to perform. And since he was not acting for his employer but for himself during that period, he and not the former was liable for any damage he might have caused a third person by negligently running into his car. "The owner of an automobile," to use the language of 2 R. C. L. 1199, paragraph 33, "is not liable to one who is injured by the negligence of his chauffeur while operating the machine without his knowledge or permission, and for a purpose other than that for which he was employed, as where the driver is on an errand personal to himself, or is making a detour for his own purposes." In *Danforth* v. *Fisher*, 75 N. H. 111, 71 Atl. 535, 139 Am. St. Rep. 670, 21 L. R. A. (N. S.) 93, the court said:

"In this state the test to determine whether a master is liable to a stranger for the consequences of his servant's misconduct is to inquire whether the latter was doing what he was employed to do at the time he caused the injury complained of. If he was, the fact that he was not doing it in the way expected is immaterial. *Rowell* v. *Railroad*, 68 N. H. 358, 44 Atl. 488. But, if at the time he did the act which caused the injury he was not acting within the scope of his employment, the master is not liable."

Among the numerous decisions upholding this rule we mention the following: *Sweeden* v. *Atkinson Improvement Co.*, 93 Ark. 397, 125 S. W. 439, 27 L. R. A.

(N. S.) 124; *Colwell* v. *Aetna Bottle & Stopper Co.,* 33 R. I. 531, 82 Atl. 388; *Steffen* v. *McNaughton,* 142 Wis. 49, 124 N. W. 1016, 19 Ann. Cas. 1227, 26 L. R. A. (N. S.) 382; *Fleischner* v. *Durgin,* 207 Mass. 435, 93 N. E. 801, 20 Ann. Cas. 1291, 33 L. R. A. (N. S.) 79, and note; *Drobnicki* v. *Packard Motor Car Co.,* 212 Mich. 133, 180 N. W. 459; *Dowdell* v. *Beasley,* 205 Ala. 130, 87 So. 18; *Salmon* v. *Neipp,* (Mo. App.) 246 S. W. 636; *Lund* v. *Olson,* 182 Minn. 204, 234 N. W. 310, 75 A. L. R. 371; Id., 183 Minn. 515, 237 N. W. 188.

While it is true that when it appeared from the testimony in behalf of appellant that the truck was owned by appellee and that Sidney was employed by it to do anything around the store, including the driving of the truck, there arose the presumption that he was acting within the scope of his employment, *Guthrie* v. *Holmes,* 272 Mo. 215, 198 S. W. 854, Ann. Cas. 1918D 1123, this was only *prima facie* so and the force thereof was completely overcome when the testimony of J. J. McNeil and his son disclosed that the latter was not following his instructions to go to the city and get the merchandise when he made the side trip of about two miles to the hospital to see about the dog. *Dowdell* v. *Beasley, supra.* The only way appellee could be held liable under such circumstances would be to hold that the law is that the mere fact that Sidney's employment covered the driving of the truck, or that he was in possession of and using it when it caused the injury to appellant, or both, is all that is necessary to make appellee responsible for his acts. To do this, however, would be to overlook entirely the essential factor that the employee must be prosecuting the work he was engaged to perform before his employer becomes liable for injuries his negligent use of his employer's car causes a third person. *Northup* v. *Robinson,* 33 R. I. 496, 82 Atl.

392. In *Sweeden* v. *Atkinson Improvement Co., supra,* the court said:

"The mere fact that he was in the service generally of the master, or that the servant was in possession of facilities afforded by the master in the use of which the injury was done, would not make the act attributable to the master. The act must have been done in the execution of the service for which he was engaged. And if the servant steps aside from the master's business to do an independent act of his own and not connected with his master's business then the relation of master and servant is for such time, however short, suspended; and the servant while thus acting for a purpose exclusively his own is a stranger to his master, for whose acts he is not liable."

Appellant contends that the question, whether the son in going to the hospital for the dog was engaged in furthering the work of his employer, is so close that it cannot as a matter of law be said that he was not, and, therefore, that the jury should have been permitted to pass upon it. Where the deviation from instructions is slight and not unusual the court may determine the employee was still about his employer's business and submit the case to the jury, and where the deviation is marked and unusual it may determine that he was not on the business for his employer and direct a verdict. *Jackson* v. *De Bardelaben,* 22 Ala. App. 615, 118 So. 504. However, as we view the evidence, Sidney's departure from his instructions was so complete that the court was justified in holding as a matter of law that he was not following his employer's business. He was directed to go to Tucson and bring back the merchandise and this meant perhaps to go and return promptly, since the weather was hot and one of the articles he was to bring back was meat. In the face of these instructions, to leave the wholesale district of the city after procuring part of the merchandise, oranges, and go twenty-four blocks in a different direction to the hospital and re-

turn, on an errand in no way connected with his trip to the city, constituted, as we view it, a deviation from his instructions so marked that it cannot with any fairness or accuracy be said he was during that period serving his employer. This is in line with the views expressed in *Johnston* v. *Hare*, 30 Ariz. 253, 246 Pac. 546. In that case the owner of a car had directed his cousin to take it to the garage only a short distance away but instead of doing so he went on an errand of his own some thirteen blocks out of the way and while driving this extra distance ran into another car and caused the injury upon which the action was based. The court instructed a verdict for the defendant upon the ground that the evidence did not show any liability on his part, and in disposing of the matter on appeal this court said:

"But, under all the evidence Sanders' agency was limited to taking defendant's car back to the garage. When he failed to do that and instead appropriated the car to go on an errand of his own, for his own pleasure and business, his agency ceased, and he no longer was acting for defendant. . . . It is fundamental that a principal is not liable for all torts of his agent, but only for those committed while the agent is acting within the limits of his agency. . . . Neither can it be presumed that Sanders drove defendant's car to McKinley street and Sixth avenue with the consent, knowledge or authority of defendant, when all the evidence is to the effect that he was delegated by defendant to take it to the garage; or that Sanders was using the car at the time of the accident for the business, purpose, or pleasure of defendant, when all the evidence is that he was using it for his personal pleasure."

If the hospital had been so situated that Sidney could have reached it on his way to or from the city by taking a road he did not customarily travel but not much out of the way, a different situation would have been presented. But the suggestion that the accident occurred while he was engaged in the em-

ployer's business because it happened after he had procured the dog and was on his way back to the wholesale district to get the remainder of the merchandise is without merit. While there are some decisions upholding this view, for instance, *Glass* v. *Wise & McAlpin,* 155 La. 477, 99 So. 409, the great weight of authority is to the contrary, and, in our view, correct, for there is no reasonable basis for the position that the return portion of the trip to the hospital rests upon any different ground than the "going" part of it. *Curry* v. *Bickley,* 196 Iowa 827, 195 N. W. 617; *Crady* v. *Greer,* 183 Ky. 675, 210 S. W. 167; 42 C. J. 1112, par. 871, and citations in note 78. The entire trip was a complete departure from his employment, one way just as much as the other, and it was necessary that he return to the point where he ceased to perform his duty, the wholesale district of the city, before it could be properly said that he had resumed the service of his employer. *Orris* v. *Tolerton & Warfield Co.,* 201 Iowa 1344, 207 N. W. 365; *Anderson* v. *Nagel,* 214 Mo. App. 134, 259 S. W. 858. The fact that part of the merchandise was in the truck when the accident occurred did not make the trip to the hospital other than a personal one; he was instructed to bring the merchandise to Marana, not to take it to the hospital.

To show that Sidney was engaged in his employer's business when going for the dog, however, appellant relies chiefly upon the contention that the evidence discloses that the parents of the dog's owner were customers of appellee's store and that his act had the effect of building up goodwill for the business. There is nothing in the evidence from which such a conclusion may be drawn. While the boy's parents did occasionally buy articles at the store the elder McNeil testified that they were not good customers, and no fact was disclosed that would suggest that the taking of the dog to the hospital was prompted by a

desire to benefit the store, or that the act of kindness should be attributed to any motive other than that of the humane instincts of the McNeils. That Sidney did not do it for the purpose of promoting the company's interests would seem to be indicated by the fact that the record fails to disclose that any act had theretofore transpired that would have led him to feel that he could make the trip to the hospital on the company's time or return the dog to its owner in the company's truck. He had taken it there after the close of business for the day and in his father's private car, not on company time or in a company truck, facts that bring to mind but one thought and that is that the dog was to be returned to its owner in the same way; certainly they did not imply that it might be taken back during business hours and in a different car. Under these circumstances it would appear that the McNeils as individuals and not as employees of the company were the recipients of whatever of goodwill flowed from this humane act.

There was no error in the court's order directing a verdict for appellee. The judgment is, therefore, affirmed.

ROSS, C. J., and LOCKWOOD, J., concur.