## PHŒNIX BLUE DIAMOND EXPRESS v. MENDEZ, and four other cases.

### No. 8953.

Circuit Court of Appeals, Ninth Circuit.

March 31, 1939.

Rehearing Denied May 4, 1939.

Henderson Stockton, Eli Gorodezky, S. N. Karam, and J. W. Cherry, Jr., all of Phoenix, Ariz., for appellant.

Minne & Sorenson and George T. Wilson, all of Phoenix, Ariz., for appellees.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

Five suits growing out of a single highway accident were brought against appellant in the Arizona state court. Four were for damages for personal injuries, the fifth for death. The suits were removed to the federal court on grounds of diversity of citizenship and there consolidated for trial. Verdicts were returned in favor of the complaining parties in all of them.

The suits were predicated on the negligence of appellant's employee. The culpability of the servant is conceded, but it is contended that at the time of the accident he was on a mission of his own, and appellant is not responsible. The principal question on the appeal is whether the court was in error in refusing to direct a verdict for appellant on this issue.

Following was the proof in support of the agency: Appellant operates an interstate trucking business between Los Angeles and places in Arizona. One of its drivers, an employee of two years standing, was Joe Smith. On the evening of December 31, 1937 a truck under lease to appellant and driven by Smith left Tucson bound for Phoenix with freight billed for Los Angeles, admittedly pursuing a journey in the furtherance of appellant's business. Entering Phoenix from Tucson a customary route of travel leads by way of Washington Boulevard, on the south side of which and about three miles east of the city was a resort or roadhouse called the Washington Tavern. The fatal collision between the truck and appellees' car took place soon after one o'clock that night on Washington Boulevard, about half-way between the tavern and the city, while the truck was proceeding westerly in the direction of Phoenix with Smith and the load of freight on board.

Appellant's operators were under instructions to stop and rest whenever they felt drowsy and to report immediately upon getting into a town, regardless of where they were going. Smith had not reported an arrival in Phoenix that night, nor had he reached appellant's docks or a certain filling station in the city, at one or the other of which places he had orders to park the truck. Shortly before the hour of the accident, according to the testimony of the proprietor, Joe Smith was in the Washington Tavern and a vehicle answering the description of appellant's truck was parked across the highway from the roadhouse, facing toward Phoenix. There was other testimony of the presence of the truck at that place in the position described and that Smith was asleep in a compartment of the vehicle designed for the accommodation of the driver.

Such were the facts brought out by complainants in their attempt to fix on appellant responsibility for the consequences of the collision. Appellant, in rebuttal, offered Smith as a witness. He testified that he reached Phoenix about 11:30 on the night in question. Instead of taking the truck where he should have taken it he stopped at the downtown Ritz Cafe and had several drinks. There he met some acquaintances. Shortly the party left the cafe and proceeded in the truck to the Washington Tavern. Smith himself did not drive but lay down in the sleeping compartment and fell asleep. The truck, he said, was parked in front of the tavern on the south side of the Boulevard, facing east. He presently followed his companions into the tavern and had some more drinks. Afterward he again went to sleep in the truck and was still asleep in it when it was driven away from the tavern and when the accident occurred. He was unable to say who was driving at the time or who had been driving at any time after the departure from the downtown cafe. Several other witnesses, including some of Smith's alleged companions of the evening, testified concerning this adventure or to incidents occurring in the course of it, corroborating Smith's story of his having been at the Ritz Cafe prior to his appearance at the roadhouse on the highway. None of them was able to identify the driver of the truck, and Smith's testimony that he was not driving at the time of the accident was not corroborated. Smith was impeached by proof of a statement said to have been made by him to the effect that he had been twenty-five hours on the road without rest, and upon reaching Washington Tavern on the way into Phoenix he stopped "to get a shot and see if any of the boys were around to help me in with the truck."

Appellant moved for a directed verdict on the ground that the evidence had established without conflict that the truck at the time of the collision was not being used in the course of appellant's business. The motion was denied and the ruling is assigned as error.

■ If Smith had arrived in Phoenix and had afterward gone to the outlying tavern, as related, appellant was not liable. Peters v. Pima Mercantile Co., Inc., 42 Ariz. 454, 27 P.2d 143. The jury were so instructed. Is the record, as appellant contends, barren of evidence to the contrary? We think not. The fact that the truck while at the tavern was parked across the highway facing toward Phoenix—a circumstance fairly established and at variance with appellant's version of the prior movements of the driver—was some evidence that the journey was as yet incomplete. But even if the fact be thought purely negative in character or not inconsistent with the case for appellant, still we cannot say that the refusal to direct a verdict was error.

A few only of the Arizona cases relied on need be reviewed. In Otero v. Soto, 34 Ariz. 87, 267 P. 947, 949, one Rojas was employed by defendant as a farmhand. On a Sunday, when he was not required or expected to work, Rojas without his employer's knowledge or consent took the latter's car on what he and two unimpeached companions testified was a pleasure trip. In line with prevailing authority, the court said that the presumption of use and control of a motor vehicle, arising from proof of its ownership, while not conclusive, has the effect of casting the burden of proof on the owner of showing that the negligent driver was not his agent, or that the driver was not at the time using the vehicle in the business of the owner. "If, therefore," says the court, "there be evidence in the case that the truck was not being used in Otero's business, which on the record as it stands cannot legally be disregarded, the presumption alone cannot be considered to raise an issue of fact which would cause the case to go to the jury, and under such circumstances it would be the duty of the court to instruct the jury to return a verdict in favor of Otero. If, on the other hand, even though there be no affirmative evidence supporting the presumption, the evidence contradicting it is of such a na-

ture that it could be legally disregarded, the presumption would be sufficient to take the question of use to the jury." Quoting with approval from the earlier case of Crozier v. Noriega, 27 Ariz. 409, 233 P. 1104, the court observed that if there are any circumstances which would justify a reasonable man in disregarding the testimony of a witness, even though it is not directly challenged, the jury may refuse to believe it. The court thought there was nothing to indicate that the two witnesses, other than Rojas, who had testified to the personal use to which the car was being put, were biased, nor any circumstance which could reasonably justify a refusal to accept their evidence. It was held that the trial court erred in not instructing a verdict in favor of the owner of the car.

In Peters v. Pima Mercantile Co., Inc., supra, no question seems to have been made of the sufficiency of the evidence to prove that the servant was on a personal errand at the time of the accident. The fact was assumed and the effect of it, only, as bearing on the presumption arising from ownership, was given attention.

Canion v. Southern Pacific Co., Ariz., 80 P.2d 397, is cited for the proposition that mere negative testimony is not sufficient to prevail as against positive and unimpeached affirmative testimony. The suit involved a crossing accident, and plaintiff's witnesses had testified that they did not hear the bell of the locomotive, whereas witnesses for the defendant testified that it was rung. The court observed that there was no real conflict in the evidence, and all of the witnesses were doubtless testifying the literal truth. The relevancy of the decision is not apparent.[1]

In the cases before us the jury were instructed that they could not disregard the uncontradicted testimony of a witness to a particular fact and that they must take such uncontradicted testimony as establishing the fact testified to, unless they believed such testimony of any witness had been contradicted by inherent improbabilities as to its accuracy or by circumstances in evidence which satisfied them of its falsity. They were told that "if you find there to exist no matters or circumstances which at all impair the testimony of a witness to a particular fact then you must take such testimony as establishing such fact

[1] Other cases cited are Davis v. Boggs, 22 Ariz. 497, 199 P. 116; Illinois Bankers' Life Ass'n v. Theodore, 44 Ariz. 160, 34 P.2d 423; Southern Pac. Co. v. Fisher, 35 Ariz. 87, 274 P. 779.

and such testimony cannot be disregarded by you."

■■ Plainly, the trial judge was familiar with the rule of evidence to be applied. It is not without significance on the appeal that the judge, who heard the testimony and was in position to observe the demeanor of the witnesses, not only declined to direct a verdict but denied as well a motion for a new trial. Crozier v. Noriega, supra. Compare Davis v. Judson, 159 Cal. 121, 113 P. 147, 150, quoted from with approval in the Noriega case. The jury, fairly instructed as to the rule, refused to accept the testimony of appellant's witnesses relating to the events of the evening. We are in no position to say they were wrong in doing so.

■ The witnesses were in the main friends of Smith. The collision had resulted in the death of one man and the serious injury of four other people under circumstances of gross negligence, and the jury may have felt there was a concerted movement to protect the truck driver from possible criminal prosecution. The witnesses were contradicted in matters of detail and in a measure they contradicted each other. Some experienced unaccountable lapses of memory. In supposed keeping with the spirit of the occasion, there had been heavy drinking and one, at least, of the witnesses admitted he was drunk. Smith had long frequented the Ritz Cafe while in Phoenix, was well known in that establishment, and recollection of his presence there on the night in question may on the part of some who testified have been thought confused with other occasions. Doubt of the truthfulness of the whole story might well have been excited or intensified by known circumstances and the physical facts in evidence. In Arizona, as elsewhere, questions concerning the credibility of witnesses and the weight of evidence are for the jury. Crozier v. Noriega, supra. The refusal to direct a verdict was not error. Department of Water and Power v. Anderson, 9 Cir., 95 F.2d 577, 585.

■ The court fairly instructed the jury on the limited effect to be given impeaching evidence. Appellant requested a more elaborate instruction on this subject, and assigns the refusal to give it as error. The opening sentence of the requested instruction was as follows: "You are instructed that no fact or circumstances nor any testimony tending in any degree to impeach Joe Smith, provides any positive evidence at all against defendant." The impropriety of the quoted portion of the request is apparent at a glance, and there was no error in this respect.

■ A juror, after argument and instructions, inquired of the court, "In case the jury finds that the truck was driven by any one else, in your opinion what would be your instructions as to the truck?" The court replied, "Well, you take that up with the other jurors. You haven't found anything yet. Wait until you get into your jury room. How do you know that the jury will find that?" It is claimed that the court erred in refusing to answer the juror's question. Admittedly, proper and full instructions had already been given on the point, and appellant asked no other or further instruction. It is said that the inquiring juror did not hear well and may not have heard the charge. The record contains no evidence of the infirmity, and in any event we see no reversible error in this circumstance. Other jurors had doubtless heard and understood the instruction and were able to enlighten their associate.

Affirmed.